SHAW *et al.*, *Appellants*, v. THE MISSOURI PACIFIC RAILWAY COMPANY.

DIVISION ONE.

1. **Railroad:** NEGLIGENCE: PETITION. A petition in an action against a railroad for the death of a person by its negligence is sufficient which avers in substance that the defendant by its servants while running a locomotive and train of cars over its road, did so carelessly and negligently manage and conduct the same that it ran against, struck and fatally injured the deceased.

2. ———: ———: TRESPASSER ON TRACK. The servants of a railroad company owe to a trespasser on its trestle only the duty, so soon as he is discovered on the track, of promptly using all efforts within their power, consistent with the safety of the train and of those upon it, to avoid injuring him.

3. The Evidence in this case examined and the action of the trial court in sustaining a demurrer to plaintiff's evidence sustained.

*Appeal from Jasper Circuit Court.*—HON. M. G. McGREGOR, Judge.

AFFIRMED.

*Thomas & Hackney* and *J. D. Perkins* for appellants.

(1) The trial court erred in sustaining defendant's demurrer to plaintiffs' evidence. When the persons in charge of a railroad train see persons on the track in front of the train in an exposed and dangerous condition, it is their duty to immediately use all efforts within their power, consistent with the safety of the persons and property on the train, to stop or check the speed of the train. *Donahoe v. Railroad*, 83 Mo. 543. (2) "A demurrer to the evidence admits the truth of the facts in evidence and all reasonable inferences in plaintiffs' favor which can be drawn therefrom." *Kelly v. Ry. & Transit Co.*, 95 Mo. 279. "When the facts are either disputed, or different inferences may be fairly drawn from the undisputed facts, the question should be submitted to the jury." *Mauerman v. Siemerts*, 71 Mo. 101; *Huhn v. Railroad*, 92 Mo. 440; *Norton v. Ittner*, 56 Mo. 351. "A demurrer to the evidence admits the facts which the evidence establishes, or tends to establish, as well as all inferences which may be fairly drawn from them." *Reiley v. Railroad*, 94 Mo. 600. "When from the evidence the question of negligence is one about which reasonable minds may differ, it should be left to the jury to make the deduction from all the circumstances to determine the ultimate fact."

*Tabler v. Railroad*, 93 Mo. 79. " If there is any evidence to support an issue it must go to the jury, who are the exclusive judges of its weight and sufficiency, however slight it may be, and whether it be direct or inferential." *Charles v. Patch*, 87 Mo. 450.

*R. T. Bailey* for respondent.

(1) The court properly sustained defendant's demurrer to the evidence. The petition did not state facts sufficient to constitute a cause of action. The practice act requires plaintiff to state in his petition a plain and concise statement of the facts constituting his cause of action. The petition in the case at bar, stripped of unnecessary verbiage, simply says in effect, that defendant's servants in Jasper county, Missouri, on May 1, 1887, struck and killed plaintiffs' son, who was a minor and unmarried at the time, while negligently running a locomotive and train of cars. This is simply a conclusion, and does not tender an issue of any facts constituting the alleged negligence. The petition, therefore, is fatally defective. R. S. 1889, sec. 2038; R. S. 1879, sec. 3510; *Gurley v. Railroad*, 93 Mo. 450; *Harrison v. Railroad*, 74 Mo. 369; *Waldhier v. Railroad*, 71 Mo. 516. (2) The second paragraph of petition contains simply a bald conclusion, without stating where or how the injury occurred, what deceased was doing, what duty defendant owed him, or any other facts which tender an issue in the case. Under the foregoing authorities, the above allegation fails entirely to state a cause of action. The fourth paragraph of petition is equally defective, and would seem to predicate plaintiffs' right of recovery, upon the failure of defendant to hire competent and skilful servants. It is also fatally defective, if this charge is attempted to be made, because it fails to show that defendant had any notice of such incompetency, or that it was guilty of negligence in employing or

retaining incompetent servants. It also fails to plead the facts, constituting any negligence upon the part of defendant. Again, there was not a syllable of testimony in the case tending to show that defendant's servants were incompetent. On this proposition, the petition was not only fatally defective, but there was an entire failure of proof. (3) The deceased was a trespasser upon defendant's track. He was occupying an extremely perilous and dangerous position, and he and those with him were guilty of gross and inexcusable negligence in attempting to cross a lengthy and dangerous trestle and bridge, without any means of escape, where trains were constantly passing and repassing. The uncontradicted testimony of plaintiffs discloses that defendant's engineer in charge of the train which killed deceased, after becoming aware of his presence upon the track, immediately reversed his engine, and did everything within his power to stop the train and avert the injury complained of. Even, therefore, if the petition stated a good cause of action, yet the plaintiffs are not entitled to recover under the testimony, and the trial court properly sustained defendant's demurrer to the evidence. *Barker v. Railroad,* 98 Mo. 53; *Yancy v. Railroad,* 93 Mo. 437; *Williams v. Railroad,* 96 Mo. 283; *Henze v. Railroad,* 71 Mo. 636; *Hallihan v. Railroad,* 71 Mo. 116; *Moody v. Railroad,* 68 Mo. 473; *Fletcher v. Railroad,* 64 Mo. 490; *Harlan v. Railroad,* 64 Mo. 482. (4) The trial court has an opportunity to see the witnesses and hear them testify; it has a better opportunity than the appellate court to notice the conduct of the witnesses upon the stand; their manner of testifying; the vindictiveness and prejudice which characterize their testimony, and many other things which never reach this court. Can this court, therefore, in view of the uncontradicted testimony, say that the trial court committed error in sustaining the demurrer? It would have felt constrained to set aside a verdict in favor of plaintiffs, under the

evidence; and we, therefore, insist that it properly took the case from the jury. *Jackson v. Hardin*, 83 Mo. 186; *Powell v. Railroad*, 76 Mo. 84; *Landis v. Hamilton*, 77 Mo. 561; *Hansmann v. Hope*, 20 Mo. App. 197.

BRACE, J.—This is an action for damages brought under section 2121, Revised Statutes, 1879, by plaintiffs, who are husband and wife, for the alleged negligent killing of their minor son.

The material allegations of the first paragraph of the petition on which alone any evidence was offered are as follows : " That on said first day of May, 1887, the defendant, by its agents, servants and employes, while running and operating a locomotive and train of cars over its said road, in said county, did so carelessly, negligently, recklessly, heedlessly and unskilfully run, manage and conduct its said locomotive and train of cars over its said road at a point in said county, that said locomotive and train of cars ran against, struck and fatally injured and wounded Frank Shaw, of which said injury and wounding the said Frank Shaw, on said first day of May, 1887, in said county, died."

The answer was a general denial with plea of contributory negligence. After the evidence for the plaintiffs had been heard, the court sustained a demurrer thereto. Thereupon the plaintiff took a *nonsuit* with leave, and judgment was rendered for the defendant. The court refusing to set aside the nonsuit, plaintiffs appealed.

The facts developed by plaintiffs' evidence are substantially as follows : On the first day of May, 1887, the plaintiffs' son, Frank Shaw, aged six years and nine months, was struck and killed by one of defendant's locomotives, running south over a trestle on its road at a point about ten feet from the south end of said trestle. The locomotive was drawing a train of twenty-six cars, nearly all heavily loaded, down a

grade of fifty-two feet to the mile, and running at the rate of about twenty or twenty-five miles an hour. The trestle upon which the lad was struck was the south approach to an open truss bridge across Spring river, or a branch of it, near Carthage, Missouri. This bridge is approached from the north also by a similar trestle; the length of the north trestle is two hundred and fifty-six feet, of the bridge one hundred and twenty-four feet, and of the south trestle two hundred and fifty-four feet, making the whole length of the trestling and bridge six hundred and thirty-four feet. The cross ties on this trestling and bridge are from sixteen to eighteen inches apart, with no plank laid across them, and the only way for a footman to cross is by stepping from one to another, on the cross ties between the rails (they extending only from sixteen to eighteen inches outside the rails). The trestle is fifteen feet high at the south end of the bridge, and nineteen feet high at the north end; nine hundred and sixteen feet north of the beginning of the trestle north of the bridge beside the road-bed there is a lime kiln. North of the lime kiln about five hundred feet is the end of a curve around a bluff, where the engineer first comes in sight of the track along the trestling and bridge.

On the morning of the accident, William H. Corbett (who had lived near the road for two months, and who knew when this train was due) with his wife, the deceased and a brother of the deceased, aged about nine years, named John, entered upon the track south of the lime kiln, and proceeded south on the track, over an embankment, to the north trestle, Corbett, his wife, and Frank in the lead, John following on behind; they passed over the north trestle; Corbett, his wife and Frank passed over the bridge and got about half way across the south trestle. John was on the bridge about half across approaching the south end, when Corbett heard the train coming, told his wife to hurry across; she and Frank stepped on as fast as they could, and he

turned, saw the train coming around the curve, and John on the bridge, ran back, met John at end of the bridge, took him up and with him stepped off the track onto one of the stone abutments of the bridge; the train passed by them, overtook his wife and Frank, the locomotive striking them before they reached the end of the trestle, inflicting injuries from which they died; passed on, commenced going perceptibly slower after it struck the up grade and stopped when it reached about the top of that grade. The train was a regular daily freight, five minutes' late. The engineer whistled for curve, and after turning it, and when about opposite the lime kiln, he discovered these parties on the track. From the point opposite the lime kiln, where the engineer first discovered the parties on the track to the point where the child was struck was about fifteen hundred and forty feet.

The foregoing are the undisputed facts in the case as they appear upon the record. In connection with these facts and the evidence of the following witnesses, plaintiffs contend that the case ought to have gone to the jury.

The engineer testified for plaintiffs, and says, that as soon as he saw them he reversed his engine, called for brakes and opened his sand chest, but the engine did not receive much check from that, on account of a strong southeast wind that blew the sand off the rails; that he did all in his power to stop the train, from the time he saw them; that he was an experienced engineer and would be doing well if he stopped the train under the conditions, at the speed and on the grade it was going, within a half mile.

The plaintiff, Mrs. Shaw, and witness, R. J. Nokes, who saw the accident from a point in a lane distant across a field, about an eighth of a mile, testified,—Mrs. Shaw that the engineer did not make any effort to stop; that she saw the engine and it was never reversed; that she did not see the engineer, but didn't think he ever

tried to stop the engine.   When asked if she didn't see the engineer, how she knew he didn't reverse his engine, she answered :   "Because I know, and he just poured on more steam ; when he saw he was going to kill the child anyhow, he just poured on more steam." When asked do you know when an engine is reversed, she answered, " I know when more steam is poured on, and the engine is going right ahead."

"Q.   Could you tell whether that engine was reversed?   A.   I can tell when an engine is coming ahead as fast as it can."

She further testified she heard no whistling until the engine was quite close to the child.

The witness Nokes testified that he couldn't notice that the train checked a particle until the train struck the child and Mrs. Corbett ; that he was noticing particularly, and if it had checked he would have noticed it ; they checked pretty quick after they had passed them ;  that the train didn't whistle until about the time it passed Mr. Corbett.

L. R. Sperry, who witnessed the accident from a position beside the track in line with the approaching train, about eleven hundred feet distant, in his evidence, stated that he heard the whistle before the train turned the curve ; that afterwards the train did not whistle or check until the child was struck ; he didn't see the wheels reversed, if by reversed it means to turn backwards ; didn't see any of the men until after the child was struck ; at the distance he was, does not think he could tell whether the engine was reversed ; could only tell by the material checking of the train.

Thomas C. Wilkinson, who was upon a very large bluff, out of sight of the train, heard a sharp, shrill whistle as if something was the matter, ran about one hundred feet down near the bridge where he could see the train, which was then on the north trestle of the bridge ; that he supposed at the gait he took he would run this one hundred feet in half a minute.

I. It is unnecessary to notice at length or in detail the objections urged against the petition, to which no exception was taken below. Under the rulings of this court, the petition stated a cause of action. *Schneider v. Railroad*, 75 Mo. 295; *Mack v. Railroad*, 77 Mo. 232; *Donaldson v. Butler Co.*, 98 Mo. 163; *Kellny v. Railroad*, 101 Mo. 67; *Pope v. Railroad*, 99 Mo. 400, and cases cited.

II. It is not often that cases come before the courts, in which such recklessness is exhibited as appears in this case in the conduct of Corbett, in attempting with his wife and these two little boys to cross this long, high and dangerous trestling and bridge on the time of this train of which he was cognizant. The only excuse he offers is that he did not know it was so late. They were trespassers, traveling where they ought not to have been, and where defendant's servants, managing its train, had a right to expect, if anywhere, that no person would be. They owed but one duty to the deceased, and that was, as soon as he was discovered on the track, to promptly use all effort within their power, consistent with the safety of the train, and those who were upon it, to avoid injuring him. The affirmative evidence of the plaintiff shows plainly that this duty was discharged. The only servant of the defendant who discovered the child on the track was the engineer; he made this discovery when his locomotive was distant from the child about fifteen hundred and forty feet, on a down grade, with a heavy train which could not be stopped on that grade within less than twenty-six hundred and forty feet. He promptly reversed his engine, opened his sand bag and whistled for brakes; if there was anything else he could have done to avoid the injury, it does not appear in the evidence.

The *facts* testified to by the witnesses, other than the engineer, do not impair the force of this affirmative evidence, the substance of which is that three of the witnesses, at a distance of from eleven hundred to

thirteen hundred and twenty feet, did not perceive any checking of the speed of the train until after the train had struck the child, reached the short stretch of level track and was about commencing the ascent of the up grade, and that one of them did not hear any whistling at all ; one not until the engine was close to the child ; one about the time it was passing Corbett at the south end of the bridge, about two hundred and forty feet from the child, while a fourth witness heard the whistling about a half a minute before the train reached the bridge, and when it must have been near the lime kiln.

There was no evidence tending to prove that, if the engineer did the things he testified to, the effect of them would have been to so check the speed of the train within the distance, as that its diminished speed would have become perceptible to these witnesses under the circumstances before the child was struck. The fact that one of the witnesses did not hear any whistling at all is of no force, in view of the fact that the three others did, and when their evidence is taken together, showing the three points at which they heard the whistling, tends to confirm the evidence of the engineer.

The legal principles governing in the case have been so often announced and are so well settled, that a review of the authorities is unnecessary.

We find nothing in the facts of the case, as they appear in the record, to warrant us in reversing the judgment of the circuit court, the judge of which had so much better opportunity of appreciating the force of the evidence than we have. The judgment is affirmed. All concur.