THE CAMDEN, GLOUCESTER AND WOODBURY RAILWAY COMPANY, PLAINTIFF IN ERROR, v. SOMERS E. YOUNG, DEFENDANT IN ERROR.

The conductor of a trolley car who had undertaken to let off at a given destination the plaintiff, who was a stranger, carried him past it; he then let the plaintiff off on the company's right of way, and directed him to walk back on the track. While obeying this instruction in the nighttime the plaintiff followed the track onto a trestle, where he was struck by a car of the defendant coming from the opposite direction. *Held*, (1) that in giving this instruction the conductor was acting as the agent of the company; that (2) whether he gave it and (3) whether it was an act of negligence were properly submitted to the jury, as also (4) was the question of the contributory negligence of the plaintiff in going on the trestle if so directed; *held, also*, that if the plaintiff was warned by the conductor not to go on the trestle, he was guilty of contributive negligence, also that the motorman whose car struck the plaintiff was under no duty to be on the lookout for pedestrians on the trestle.

On error to the Supreme Court.

For the plaintiff in error, *David J. Pancoast.*

For the defendant in error, *John J. Crandall.*

The opinion of the court was delivered by

GARRISON, J.   The facts not disputed at the trial were that the plaintiff was a passenger upon a trolley car of the defendant; that he desired to leave the car at Newbold, a small village between Gloucester City and Woodbury; that the car passed Newbold and had gone a short distance when a conversation took place between the plaintiff and the conductor of the car, as the result of which the former left the car and walked back upon the defendant's right of way, which was not a public road; that he came to a trestle that carried the rails of the car tracks over a piece of low land; that he was walking the ties laid on this trestle when a car, coming from the direction in which he was walking, struck him and knocked him from the trestle to the ground.

The *gravamen* of the plaintiff's action was that the conductor carried him past Newbold, although notified that he wished to be let off at that place, and then directed him to walk back upon the track to Newbold, and that in so doing he was caught upon the trestle and injured in the manner above described.

In this state of the proofs the defendant, at the close of the plaintiff's case, moved for a nonsuit upon the ground that no cause of action against the company had been shown.   The contention of the defendant was that it had been guilty of no negligence at the time the plaintiff left its car and voluntarily ceased to be a passenger, and that the conductor's direction to the plaintiff to walk back on the track, was gratuitous advice given to a pedestrian and not an act done as the representative of the carrying company.

On the other hand, it was argued by the plaintiff that it was negligence in the conductor to carry him past Newbold

after the notification that he wished to be let off at that point, and that the direction given to the plaintiff was an attempt to remedy this default, and hence part of the original act of negligence. Having thus identified the conductor with the defendant's business, the further contention was that the direction itself was a negligent act the probable consequence of which was to endanger the plaintiff. It is not necessary to pass upon the broad proposition that the failure of the conductor to let the plaintiff off at the designated point was, *per se*, an act of negligence that rendered the company liable for whatever might flow from it. There is little or no analogy in this respect between the operation of street railways and that of ordinary railroads. Upon the one, the passenger rides by virtue of the cash payment of a fare, and without any specific contract as to his place of destination ; upon the other he is carried upon a written token that passes into the possession of the conductor, who is thereby apprised of the terms of the contract and of the necessity of stopping the train in fulfillment of those terms. It might be a grievous if not an impracticable rule to require a street car conductor to bear in mind the special designation of each passenger upon a mere notification. The passenger has some duties cast upon him, and the reasonable doctrine would seem to require that, upon the announcement by the conductor of each street or point of stoppage, the passenger must indicate his purpose to alight. There is, however, no reason why a conductor may not undertake to inform a passenger when his destination is reached. Indeed, in the case of the very young or of the very old, or of passengers who are infirm, or even of strangers to the locality, such an undertaking would be in the line of the company's business for which it could not disavow reasonable responsibility. In the present instance the plaintiff relied upon such an undertaking, and thereby raised a question that necessarily called for the opinion of the jury.. Whether the plaintiff was, upon his own showing, guilty of contributory negligence, was likewise a jury question. There was, therefore, no error in the refusal of the trial court to direct

a nonsuit. The applicability to the plaintiff's case of the provisions of "An act to prevent accidents on railroads" (*Pamph. L.* 1869, *p.* 806 ; *Gen. Stat., p.* 2680), was not raised or discussed by counsel, and hence has not been judicially considered.

The testimony for the defendant raised an issue of fact with respect to the instruction given by the conductor to the plaintiff. The language of the conductor upon the witness-stand was as follows :

"*Q.* Had he [the plaintiff] spoken to you on the subject before that?

"*A.* Not to my knowledge; I said to him, 'My dear friend, we are by Newbold; you should have told me before, but,' I says, 'however, as we have carried you by, you stay on the car, and when we meet the up-bound car I will put you on it and send you back to Newbold, which won't cost you anything;' no; he insisted upon getting off the car; I stopped the car and he stepped off; 'Now,' I said, 'there is a trestle-road that we have just crossed, and there is a road around the bank; now, don't dare to cross the trestle-work, because it is dangerous; a car going in either direction might hit you; there is a road going around the bank; be sure and take that.'"

With reference to this version of the affair, the jury was instructed by the trial court in this language :

"If you believe that, notwithstanding what the conductor told him—notwithstanding the instructions he had from the conductor to go back on that track—if you believe the conductor said so, and you think, as a prudent, sensible man, he had no right to take those instructions and go on that track, that is a question for you to say, and if you say so, then he cannot recover. It is a question for you to decide, notwithstanding all that happened, was he protected, clearly protected, by the statement or direction of the conductor to go? If you say that, as a sensible man, in spite of everything, instructions or not, he was careless to go there at all, you will say it, and he ought not to recover."

In another part of the charge this language is used:

"But if the conductor told him, as the conductor says he did, not to go on or cross that trestle, he could not take the risks of being killed or injured, and treat his instructions lightly, and recover for injuries resulting therefrom. But if, notwithstanding his instructions, he went there seeking for a way out of his then serious predicament, and found, after going some distance, that it was really a dangerous place, and, as he saw the light of an approaching car, then undertook to return, trying to save himself as best he could, finding, perhaps, that he had been misled and trapped at that instant, and, while making efforts to escape and save himself, was overtaken by the car on the track and hit, it is then a question for you whether or not he had done what a reasonably-prudent man could do, situated as he was, and had taken the precautions that a reasonable and prudent man could be expected to take in his predicament. That is a question for you."

These instructions left to the jury the question whether the plaintiff was guilty of contributory negligence if he failed to take the road the conductor directed him to travel, and went upon the trestle in the face of a specific warning of the danger of so doing.

In this there was error.

If the direction given to the plaintiff was that testified to by the conductor, he disobeyed it at his peril, and there was neither liability on the part of the company nor right of recovery to the plaintiff.

Upon another point, also, there was error. The defendant requested the court to charge:

"That it was not carelessness on the part of the motorman not to anticipate the presence of the plaintiff on the trestle where he was at the time the car approached him."

In response to this request, the court, in effect, left it to the jury to say whether reasonable care on the part of the motorman would not have enabled him to avoid striking the plaintiff on this trestle, and that if it would, he was negli-

gent in not exercising such a degree of vigilance.    Inasmuch as the trestle was constructed upon private property and was in no respect a public highway, the motorman, in crossing it, had no other duty than to avoid running down the plaintiff if he became aware of his presence.    He was not required to exercise a vigilance predicated upon the possibility, still less the probability, of meeting a pedestrian at that time of the night, in so unusual and perilous a place.    The defendant was entitled to have the jury charged in substantial compliance with his request.

The judgment of the Supreme Court is reversed, in order that there may be a *venire de novo.*

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, COLLINS, DEPUE, GARRISON, GUMMERE, LIPPINCOTT, VAN SYCKEL, BOGERT, DAYTON, HENDRICKSON, NIXON.    11.