[No. 4292.   Decided December 16, 1902.]

W. F. RICHARDSON, *Appellant,* v. EMELINE MOORE, *Respondent.*

TRIAL — REOPENING CASE FOR INTRODUCTION OF TESTIMONY — AMEND-
    MENT OF COMPLAINT TO CORRESPOND WITH PROOF.

The reopening of a case to allow the contestant of a will to in-
troduce in evidence another will making her a residuary legatee,
although the petition contesting the will did not show upon its
face any interest of the petitioner in the property of deceased,
was not prejudicial to the adverse party, where the will was al-
ready on file in the case and the evidence could have been no sur-
prise to him.

PLEADINGS — AMENDMENT ON APPEAL.

Where a party to an action was entitled to amend her plead-
ing to correspond to the proof, the supreme court will on appeal,
under the provisions of Bal. Code, § 6535, consider the amend-
ment as made.

WILLS — TESTAMENTARY CAPACITY — SUFFICIENCY OF EVIDENCE.

A woman sixty-four years of age became insane and was taken
to a hospital in the month of May, and a few days later was re-
moved to her son's home, whence she was removed to an insane
asylum about the middle of July of the same year upon a judg-
ment of insanity rendered by the court; in June, while at her
son's home, she revoked a former will in which she had disin-
herited him, and made a new will in his favor; there is some evi-
dence that she had lucid intervals before making this last will;
after making it she grew gradually worse and in less than four
weeks was committed to the asylum.   At the time of making the
will she was very nervous during the day and restless at night;
walked the floor and refused to remain in bed; and had delusions
and hallucinations.   Her physician, who attended on her at the
time, and had known her for the past twelve years, testified that
he did not think she was sane enough to make a will.

*Held,* sufficient to support the finding of the court that the tes-
tatrix was of unsound mind at the time of making the last will.

Appeal from Superior Court, King County.—Hon.
BOYD J. TALLMAN, Judge.   Affirmed.

*Edward Holton James,* for appellant.

*Charles F. Munday,* for respondent.

The opinion of the court was delivered by

MOUNT, J.—On October 31, 1892, Charlotte B. Richardson, being 61 years of age, executed a will, by which she left to her son, W. F. Richardson, who was her only child, the sum of $10, and to her sister, Emeline Moore, all the remainder of her property. About the middle of May, 1897, Mrs. Richardson became insane, and was taken to the Seattle General Hospital. After being there a few days, she was taken to the home of her son, W. F. Richardson. On June 24, 1897, while she was at the home of her son, she executed another will, by the terms of which she revoked all former wills, and left to her sister, Emeline Moore, some table ware and jewelry and all her household goods, and to her son "all the rest, residue, and remainder" of her property. On July 19, 1897, she was, by the superior court of King county, adjudged to be insane, and committed to the insane asylum at Steilacoom, where she remained until her death, from senility and exhaustion, on April 14, 1901. On April 15, 1901, the will dated June 24, 1897, was filed in the superior court of King county, and admitted to probate the same day, and her son, W. F. Richardson, named therein as executor, was appointed as executor, and qualified as such. On October 9, 1901, Emeline Moore filed her petition in said superior court praying for the probate of the will dated October 31, 1892, and at the same time filed her petition contesting the validity of the will dated June 24, 1897, and praying that the probate thereof be revoked, that the said will be declared void, on the grounds that said Charlotte B. Richardson at the time of making the said last named will was insane and

incompetent to make the same, and that the execution thereof was procured by undue influence. Issues were made up, and the case went to trial before the court without a jury, resulting in findings in favor of the contestant, and a decree that the will dated June 24, 1897, together with the probate thereof, be annulled, revoked, and letters testamentary issued thereon be set aside and canceled. From this decree this appeal is prosecuted by the executor.

Two assignments of error are made and argued in the brief of appellant, as follows: "(1) The court erred in permitting the contestant, after resting her case, and without any amendment of her petition, to introduce in evidence the will dated October 31, 1892. (2) The court erred in its sixth finding of fact, in finding that the deceased was without testamentary capacity to make the will in favor of her son."

1. The petition contesting the will did not show upon its face any interest of the petitioner in any will, or in the property of the deceased. No demurrer was filed to this petition, and no question was raised on that account, until after the close of the evidence of the contestant, when counsel for the executor moved for a nonsuit upon the ground that the contestant had shown no interest for the institution of the action. Counsel for the contestant was thereupon permitted by the court to re-open his case, and introduce in evidence the will bearing an earlier date, by which she was made the principal beneficiary. The only objection made to this evidence was that contestant had closed her case. No objection was made that the allegations in the petition were insufficient. If such an objection had been made, it was within the discretion of the trial court to have permitted an amendment thereof. *Seward v. Derrickson,* 12 Wash. 225 (40 Pac. 939); *McDonough v. Great Northern Ry. Co.,* 15 Wash. 244 (46

Pac. 334). The evidence introduced was already on file in the case, and showed conclusively the interest of the contestant in the will. This evidence could have been no surprise to the executor, and could not have misled or prejudiced him in any way. It was not objected to on any such grounds. Under these circumstances the contestant was entitled to amend the petition to correspond with the proof, and this court on appeal will consider such amendment as made. Bal. Code, § 6535; *Allend v. Spokane & N. Ry. Co.*, 21 Wash. 324, 333 (58 Pac. 244).

2. The sixth finding of fact is as follows:

"That during the month of May, 1897, and about the middle of said month, said Charlotte B. Richardson became insane and of unsound mind, and wholly incompetent to make a will, or to devise or bequeath her estate by will; that she continued wholly insane and incompetent as aforesaid from that time, to-wit, about the middle of May, 1897, until the time of her death, on April 14, 1901; that on July 19, 1897, she was, by decree of the court duly made, admitted to the state asylum for the insane at Steilacoom in the state of Washington, and that she remained an inmate of said asylum from that time until the time of her death; that at no time after she became insane as aforesaid was she of sound mind, or competent to make a will; that on June 24, 1897, at the time when she signed the aforesaid written document bearing date that day, said Charlotte B. Richardson was insane and of unsound mind, and not competent to make a will; that said alleged will bearing date that day was without any right or authority in law, and that the same is invalid, null and void."

To determine the correctness of this finding necessitates an examination of all the evidence in the case. We have made this examination, and it clearly appears that the testatrix, at the time she was at the Seattle General Hospital in May, was insane; that she grew gradually worse until she was committed to the insane asylum at Steilacoom, and

also thereafter until her death.    There is some evidence in the record that, about the latter part of May and the first part of June, before she made the last will, she had lucid intervals; that she told about the making of the first will some five years before, by which she had disinherited her son, and expressed a desire to change the will; that she wrote a note in her own hand to the attorney who had the first will, and directed him to deliver the same to her son's wife; that she thereafter, on June 24th, made the second will.    After this time she grew gradually worse until she was committed to the asylum on July 19th, less than four weeks after the making of this willl.    She was past 64 years of age at the time she made this last will.    She was very nervous during the day and restless at night; walked the floor, and refused to remain in bed; had delusions and hallucinations.    Dr. Churchill, a practicing physician of thirty years' experience, who had known the testatrix personally for twelve years, and who had attended her professionally "a number of times," testified as follows:

"I did not see this change until I was called to attend her at the Seattle General Hospital.    Q.    When was that? A.    That was the latter part of May or the first of June in 1897, I think.    Q.    What was her condition mentally at that time, and physical as well?    A.    She was in an exceedingly nervous condition, and very much depressed; and, after observing her two or three days, I concluded she was suffering from melancholia,—a form of insanity.    Q. And did you see her frequently after that?    A.    Yes, sir. Q.    And during that period for how long a time?    A.    I saw her frequently after that until she was committed to the insane asylum.    Q.    That was the 19th of the following July?    A.    Yes, sir.    Q.    Now, how did her condition change, if at all, as to her getting better or worse? A.    Well, I could not see any change.    She gradually grew worse until she was committed to the asylum.    Q.    During the time she was at the hospital, how frequently did you

see her? Each day, for how long a time? A. I don't know as I could recollect now. She was only there a short time,—a week or so, and she was not violent, and her daughter-in-law thought she could take care of her at home. Q. Did you see her while she was at the home of W. F. Richardson? A. I saw her a number of times there; yes, sir. Q. Now, at that time did she have lucid intervals, or was her condition continuous? A. Well, I don't know as I could tell. I could not see any improvement in her condition. Sometimes she was quieter than at other times. She would talk to me about her physical feelings, and at all times manifested a good deal of nervousness, unable to sit still, and seemed to be brooding and melancholy and depressed, as one is under those conditions. Q. Now, at that time, what would you say of her condition as to her ability to form a conclusion, or to reason logically, or to transact business, or dispose of her property, or execute a will, or anything of that kind? A. I do not think she was mentally capacitated for anything of that kind. Mrs. Richardson (meaning the daughter-in-law) asked me several times if I thought her mother could make a legal will, and I told her I did not think so. Q. That was during the time she was at her house? A. Yes, sir. Q. Your conclusion was from what you saw and knew of her, and what you had known of her condition? A. Yes, sir. Q. That is your conclusion now and at that time? A. I never saw any sign of improvement in her, but gradual deterioration."

And further on in his testimony he said in substance:

"She was constantly in great perturbation, and I don't think she was capable of making a sane will. I could not see any abrupt change, but simply a gradual deterioration, growing weaker in mind and body. I do not think there was any time when she grew better."

The testimony of Dr. Churchill in this case is entitled to great weight, if it is not controlling of the case. It is not discredited in any way by any witness having equal advantages and opportunities of knowing the facts. He was

an entirely disinterested person, having no relations with any of the parties hereto, and no interest in the result of the case. Schouler on Wills (3d ed.), § 119, says:

"Where one's mental condition appeared to his medical attendant suitable for the testamentary act, or the reverse, shortly before or after the will was made, testimony to this purport should carry great weight. But after all, the real point at issue upon which such testimony bears, is the mental condition, the state of surrounding circumstances, at the precise time of the testamentary act."

See, also, note 2 to this section, and §§ 196 and 204.

The weight of the evidence in this case appears to sustain the findings of the trial court, but we have often held that, if we deem the testimony upon review as evenly balanced, we should sustain the findings of the lower court, who saw and heard the witnesses.

The judgment appealed from is therefore affirmed.

REAVIS, C. J., and ANDERS and DUNBAR, JJ., concur.