[No. 10662.  Department One.  December 26, 1912.]

JOHN NICOL, *Respondent*, v. OREGON-WASHINGTON
RAILROAD AND NAVIGATION COMPANY,
*Appellant.*[1]

RAILROADS—ACCIDENTS AT CROSSINGS—PLEADING AND PROOF—VARIANCE. It is an immaterial variance that the complaint alleged that the defendant's engineer saw plaintiff's automobile stalled on a crossing in time to have stopped the train, and the proof showed that had the engineer been keeping a proper lookout, he could have seen plaintiff's signals, as he ran down the track to give warning, in time to have stopped the train and avoided the collision.

[1]Reported in 128 Pac. 628.

SAME—CONTRIBUTORY NEGLIGENCE. It is contributory negligence for a driver of an automobile, on a bright night with all the lights on his machine lighted, to drive off a 16-foot planking at a railroad crossing and stall his car near the cattle guards.

SAME—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE—LAST CLEAR CHANCE—EVIDENCE—SUFFICIENCY. In an action for damages to an automobile, negligently stalled on a railroad crossing in a public highway, the railroad company is liable under the doctrine of the "last clear chance," and the engineer is guilty of negligence, where it appears that the night was clear and a man on the track could have been seen a distance of 1,200 feet, and the train stopped within 1,000 feet without an emergency stop, that the plaintiff ran down the track lighting matches and waving his hands, in the rays of the headlight, giving the engineer 1,500 feet in which to stop the train had he been keeping a proper lookout.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered March 4, 1912, upon findings in favor of the plaintiff, after a trial on the merits before the court, in an action in tort. Affirmed.

*Bogle, Graves, Merritt & Bogle* and *Sullivan & Christian*, for appellant.

*Myron C. Cramer, B. S. Grosscup*, and *W. C. Morrow*, for respondent.

Gose, J.—This is an action for damages against the defendant, a common carrier, for an alleged negligent destruction of plaintiff's automobile at a country crossing. The case was tried to the court. Findings were made in favor of plaintiff, and a judgment was entered thereon, from which the defendant has appealed.

The negligence charged is that, while the respondent was in the act of driving his automobile over the railroad crossing in a public highway, the machine became stalled crosswise of the track, the engine of the machine stopped running, the respondent was unable to start it or to move the machine off the track, and "the engineer and fireman in charge of defendant's said train saw the plaintiff before the train got to him, and saw his automobile standing upon the

crossing in sufficient time to have stopped said train and to have avoided colliding with and destroying plaintiff's automobile." The appellant joined issue on the charge of negligence, and pleaded that the collision resulted from the negligence of the respondent. The collision occurred about one o'clock in the morning.

The court did not find, and the evidence does not show, that the engineer actually saw the machine. The court's findings in this respect are that, when the respondent found that he could not extricate his machine, he ran north along the track and right of way toward the approaching train, a distance of 650 or 700 feet, lighting matches, waving his arms, and shouting to signal the engineer in charge of the train, and that, had the engineer been keeping a proper lookout ahead, he would have seen the respondent, who, while running down the straight track, was in plain view of the engineer in the rays of the headlight of the engine for at least 1,000 feet before the engine passed him, and would have seen his signals in time to have stopped the train before striking the machine.

The first point urged is that there is a variance between the pleadings and the evidence, and that the findings are not within the issues. The variance is immaterial. Rem. & Bal. Code, § 1752; *Irby v. Phillips*, 40 Wash. 618, 82 Pac. 931; *Richardson v. Moore*, 30 Wash. 406, 71 Pac. 18.

The further consideration of the case necessitates a statement of the essential facts. The train which struck the automobile was a passenger train composed of nine cars, and was traveling from Tacoma in a southerly direction, at a speed of thirty-five to thirty-eight miles an hour. The engine was equipped with a standard electric headlight, burning brightly, and lighting the track so that an object thereon could be seen on a bright night a distance varyingly estimated by the locomotive engineers at from 1,000 to 1,800 feet. The track has a one degree curve for a distance of 200 feet immediately north of the crossing where the accident

happened.  From there northward it runs straight for a distance of 4,800 feet.  The respondent says that he ran north towards the approaching train, following the center of the track, for about 500 or 600 feet, striking matches and waving his arms, and that he then stepped to the outside of the track and continued running along it a distance of 100 to 200 feet, giving the same signals, at which point he was passed by the train.  The engineer says, that he passed him about 500 feet north of the crossing; that he did not see him until the headlight was opposite him, and that he then applied his air, but did not apply the emergency brakes, and that he stopped the train in 1,000 feet.  The engineer admitted that he knew that the track was crossed at grade by a public highway at the point where the collision happened. The respondent was returning to Tacoma from the country club, at American Lake, in his machine, the morning of the accident.  He was traveling north on the west side of the railroad track.  He got on the wrong road, crossed the railroad track, and discovering his mistake, turned and started to recross the track, got off the planking, which was 16 feet wide over the track, and got his machine stalled cross-wise of the track near the cattle guards, as before stated.  He says that the night was bright, and that the stars were shining, and that all the lights upon his machine were lighted and in good condition.  These facts clearly establish his negligence.  *Moore v. Great Northern R. Co.*, 58 Wash. 1, 107 Pac. 852, 28 L. R. A. (N. S.) 410.

The principal fact in dispute was as to whether the night was clear or foggy.  The respondent's witnesses asserted the former to be the fact, whilst the appellant's witnesses insisted that the latter was the fact.  The court found that "the night was clear, there being no fog to any extent or other atmospheric difficulty to interfere with the engineer's view."  We accept the fact as found by the court.

The respondent contends that, conceding his negligence, the negligence had ceased; that appellant owed the duty of

keeping a lookout; that had the engineer exercised reason-
able care, he would have seen the respondent and his signals
in time to have avoided the collision; and that the appellant
is liable under the doctrine of "last clear chance." On the
other hand, the appellant earnestly insists that it owed no
duty to the respondent, except to not wilfully injure him or
his property after *actually* discovering his peril.

We think the respondent has the correct view. His ma-
chine was within the public highway; he was in no sense a
trespasser, although without the traveled portion of the road.
The appellant knew of the presence of the highway, knew
that it crossed the track at grade, and knew that it was
traveled by the public. Moreover, it was the duty of the
engineer to exercise reasonable care, and had he done so, un-
der his own testimony, assuming that the night was clear,
he would have seen the respondent and his signals a distance
of 1,000 feet or more. This would have given him at least
1,500 feet in which to stop the train, according to his own
statement. He testified that he was keeping a lookout
ahead, but that the presence of the fog obscured his vision.
One of the appellant's witnesses, Mr. Champlain, a locomo-
tive engineer, testified that the engineer could see a man
ahead a distance of 1,200 feet on a clear night. In failing
to see the respondent and heed his signals, the engineer was
clearly guilty of negligence. The act of a man running
along a right of way at one o'clock in the morning, striking
matches and waving his arms, is a circumstance that ought
to attract the attention of a prudent engineer, and it was
notice that there was danger ahead.

The doctrine of last clear chance is applied perhaps most
frequently to cases where the plaintiff's negligence has ter-
minated, and where the defendant thereafter, in the exercise
of reasonable care and owing a duty to exercise it, should
have discovered the peril in time to have prevented an in-
jury. It has also often been applied where it would be ap-
parent to one in control of a dangerous agency, if exercis-

ing reasonable vigilance, that a traveler is unconscious of his danger or so situated as to be incapable of self-protection; and in such cases, if the one controlling the agency could have averted the danger by exercising reasonable care and failed to do so, liability follows. It is based upon the principle that the negligence of the one is remote, and that the negligence of the other is the proximate and efficient cause of the catastrophe, he having the last clear opportunity of preventing it. These views find support in the following cases: *Bullock v. Wilmington & W. R. Co.*, 105 N. C. 180, 10 S. E. 988; *Baltimore & O. R. Co. v. Anderson*, 85 Fed. 413; *Southern R. Co. v. Fisk*, 159 Fed. 373; 3 Elliott, Railroads (2d ed.), § 1115; *Grand Trunk R. Co. v. Ives*, 144 U. S. 408; *Turnbull v. New Orleans & C. R. Co.*, 120 Fed. 783; *Inland & Seaboard Coasting Co. v. Tolson*, 139 U. S. 551; *Southern R. Co. v. Bailey*, 110 Va. 833, 67 S. E. 365, 27 L. R. A. (N. S.) 379; *Klockenbrink v. St. Louis, & M. R. Co.*, 81 Mo. App. 351; *Bergman v. St. Louis I. M. & S. R. Co.*, 88 Mo. 678, 1 S. W. 384; *Lloyd v. St. Louis, I. M. & S. R. Co.*, 128 Mo. 595, 29 S. W. 153, 31 S. W. 110.

In the *Bullock* case, the plaintiff's team, drawing a portable steam engine, had become stalled at the crossing of defendant's road in a public highway, and was struck and killed by a passing train It was held that the defendant was guilty of negligence, if the engineer by the exercise of reasonable care could have seen that the road was obstructed, in time to stop his train before reaching the crossing, although he did not in fact see it. Elliott says that a railroad company is liable for an injury inflicted upon a traveler at a railroad crossing, notwithstanding his negligence, where the exercise of reasonable care on its part would have prevented the injury "after it discovered, or ought to have discovered, his danger and inability to take care of himself." In the *Anderson* case, the plaintiff, a boy, while attempting to cross the defendant's track in a street, got his foot caught in an opening between the platform and the rail, and while

in that plight, was injured by a moving train. The trial
court assumed that the plaintiff was negligent, and charged
the jury that his negligence would not relieve the defendant
from liability, if they found that "by due care, the engineer
and fireman might have stopped the train after they had
seen, or ought to have seen, the position of danger in which
the plaintiff, by reason of his negligence, was placed, and
could thus have avoided injuring him." The instruction was
approved in an opinion written by Judge Taft, wherein he
took occasion to say that the plaintiff was one of the public,
and that:

"The obligations upon the public and the railroad com-
pany at an intersection of the track with a highway are cor-
relative  .  .  .  Neither is relieved from the duty of care-
fully watching the crossing to avoid accidents by the as-
sumption that the other is doing his or its whole duty at
such a place;"

and that the same duty was not owed to a trespasser.

In the *Fisk* case, the plaintiff, a boy twelve years of age,
was attempting to cross the railroad track at an avenue in
a city in the nighttime, and his foot was caught and held
in a switch point in the tracks, a few feet without the street.
While endeavoring to release his foot and making outcries,
he was struck and injured by a train moving backward. The
presence of the boy was not discovered by the engineer in
time to avoid the infliction of the injury. The court said,
that whether the boy was a trespasser was a question of fact
for the jury; that while the tracks are a warning to the
traveler of railway movements liable to be met, the highway
crossing is likewise notice to the operators of engines or cars
that travelers upon the highways are to be expected, and
that care is exacted commensurate with such knowledge, and
that,

"If the plaintiff was unmistakably attempting to cross the
tracks upon the street crossing, and his deviation was acci-
dental, as stated in the direct testimony, he was within the

benefits of such crossing rule; for the exercise of reasonable care in the movement of the train, measured by the conditions which were either known or within the observation of the engineer and trainmen, and thus unaffected by the rule as to trespassers."

In the *Ives* case, the plaintiff's intestate was killed by a railway train at a street crossing. One contention was that the deceased was guilty of contributory negligence which was the proximate cause of the accident and exempted the defendant from liability. Speaking to this question, the court said:

"The contributory negligence of the party injured will not defeat the action if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence."

In the *Bergman* case, the plaintiff's son, a minor eighteen years of age, was killed by a backing train, while walking on the railroad track in the city of St. Louis. The court said that, admitting the negligence of the boy, there should be a recovery "if the defendant either knew, or might by the exercise of ordinary diligence have known, of his dangerous position on the track in time to have prevented the accident." The same rule was declared in the *Klockenbrink* case, where the plaintiff, while driving his team upon a street, with two wheels of his wagon and one horse between the rails of a street car track, was struck by a car approaching from behind. In the *Lloyd* case, the plaintiff's husband was run over and killed by the defendant's train, while standing upon a public crossing on the side track at a station talking with an acquaintance, and a like rule was declared. The subject is exhaustively considered and the authorities reviewed in *Southern R. Co. v. Bailey, supra.* As a result of such analysis, the court said:

"If, however, it appears that those in control of a train, in the discharge of their admitted duty to keep a reasonable outlook, discover, or should have discovered, a person upon the track, and there be superadded any fact or circumstance

brought home to their knowledge, sufficient to put a reasonable man upon his guard, that the person upon the track pays no heed to his danger and will take no step to secure his own safety, then the situation changes and the negligence of the person injured becomes the remote cause or mere condition of the accident, and the negligence of the railroad company the proximate cause, and there may be a recovery."

The engineer testified that he stopped the train, after seeing the respondent, in a distance of 1,000 feet, and that he could have made an emergency stop in 700 or 900 feet. The locomotive engineers who testified for the respondent said that the particular train could have been stopped in an emergency in a distance of 600 feet. The engineer had a right to exercise his best judgment as to whether the conditions which confronted him demanded an emergency stop (his first and highest duty being owed to the passengers), and the appellant could not be held liable for an error of judgment made under such circumstances. We place the liability upon the ground that (as the court found) the respondent, while running down the "straight track," was in plain view of the engineer, in the rays of the headlight, for at least 1,000 feet before the engine passed him. This being true, if the engineer had been keeping a proper lookout—and all the appellant's expert witnesses testified that all prudent engineers keep a constant lookout ahead—he would have seen the respondent and would have seen his signals, and in view of the lateness of the hour and the proximity of the highway crossing, it was his duty to heed the signals. We have found no case involving facts similar to those present in this case, but we think the case readily accommodates itself to the principles announced in the authorities which we have reviewed.

The cases cited by the appellant may be divided into three principal classes. In the first class, the negligence of the injured party had not ceased, but continued up to the point

of contact. *Austin Dam & S. Co. v. Goldstein*, 18 Tex. Civ.
App. 704, 45 S. W. 600; *Smith v. Houston & T. C. R. Co.*,
17 Tex. Civ. App. 502, 43 S. W. 34; *Stewart v. Portland
R. Light & Power Co.*, 58 Ore. 377, 114 Pac. 936, and
*Bourrett v. Chicago & N. W. R. Co.*, 152 Iowa 579, 132 N.
W. 973, 36 L. R. A. (N. S.) 957, fall within this class. The
decision in the *Stewart* case was by a divided court. The
minority were of the opinion that the negligence of the plain-
tiff had culminated before the injury, and hence that if the
defendant by exercising ordinary care could have discovered
his peril and prevented the injury, it was liable for not hav-
ing done so.

In the second class, the person or property injured was
trespassing upon the defendant's right of way at a point
without a public highway. *Lake Erie & W. R. Co. v. Weisel*,
55 Ohio St. 155, 44 N. E. 923; *Dull v. Cleveland, C. C. &
St. L. R. Co.*, 21 Ind. App. 571, 52 N. E. 1013; *Camden, G.
& W. R. Co. v. Young*, 60 N. J. L. 193, 37 Atl. 1013; *San An-
tonio Traction Co. v. Kelleher*, 48 Tex. Civ. App. 421, 107 S.
W. 64; *Hoffman v. Missouri Pac. R. Co.*, 24 Mo. App. 546;
*Dotta v. Northern Pac. R. Co.*, 36 Wash. 506, 79 Pac. 32;
*Matson v. Port Townsend Southern R. Co.*, 9 Wash. 449,
37 Pac. 305; *Reynolds v. Northern Pac. R. Co.*, 22 Wash.
165, 60 Pac. 120; *Hamlin v. Columbia & Puget Sound R.
Co.*, 37 Wash. 448, 79 Pac. 991; *Shaw v. Missouri Pac. R.
Co.*, 104 Mo. 648, 16 S. W. 832; *Eastern Kentucky R. Co.
v. Powell*, 17 Ky. Law 1051, 33 S. W. 629.

In the third class, the plaintiff, being upon the defend-
ant's premises without an invitation either express or im-
plied, stepped into an unguarded post hole, and was held to
have been a trespasser. *West v. Shaw*, 61 Wash. 227, 112
Pac. 243. In these cases it was held that the defendant owed
no duty to the plaintiff until his peril was discovered.

We think the judgment is right, and it is affirmed.

MOUNT, C. J., CROW, PARKER, and CHADWICK, JJ., con-
cur.