[No. 5022.    Decided December 31, 1904.]

JOE DOTTA, *Appellant,* v. NORTHERN PACIFIC RAIL-
WAY COMPANY *et al., Respondents.*[1]

RAILROADS—NEGLIGENCE—RIGHT OF WAY—INJURY TO PEDES-
TRAIN ON TRESTLE—WHEN A TRESPASSER.   Where railroad com-
panies constructed a trestle over the tide flats, for a side and
storage track, upon which no planks were laid for foot pas-
sengers, and which was unusually narrow and with gaps at the
sides by reason of missing ends of ties, so that it was difficult
of passage and seldom used when cars were stored thereon,
although such track furnished a convenient way from a city
street to the manufacturing plants on the water front, and was,
when not obstructed by cars, extensively used for that purpose
without any objection being made by the railroads, a right
of way along the track is not acquired by user, and one who
attempts to use it while occupied by cars, which he tries to
pass, is a trespasser; and when such person is injured before
being discovered by trainmen coupling the cars, the company is
not laible for failure to keep a lookout, as for a licensee, and
a nonsuit is properly directed.

SAME—DOCTRINE OF LAST CLEAR CHANCE.   In such a case the
doctrine of the "Last clear chance" has no application since the
defendants had no knowledge that movement of the cars would
result in injury to the plaintiff.

Appeal from a judgment of the superior court for King
county, Griffin, J., entered June 29, 1903, upon with-
drawing the case from the jury at the close of plaintiff's
evidence, in an action for injuries sustained by a pedes-
trian upon a railroad trestle.   Affirmed.

*Carkeek & Childe (John T. Condon,* of counsel), for
appellant.   Where the public has been in the habit of
using the tracks of a railroad company as a pathway,
the company owes the obligation to maintain a lookout,
especially when backing trains on the tracks.   *Whalen
v. Chicago etc. R. Co.,* 75 Wis. 654, 44 N. W. 849;

[1]Reported in 79 Pac. 32.

*Lampkin v. McCormick,* 105 La. 418, 29 South. 952, 83 Am. St. 245; *Reifsnyder v. Chicago etc. R. Co.,* 90 Iowa 76, 57 N. W. 692; *Hamilton v. Morgan etc. Co.,* 42 La. Ann. 824, 8 South. 586; *South & North Ala. R. Co. v. Donovan,* 84 Ala. 141, 4 South. 142; *Pickett v. Wilmington etc. R. Co.,* 117 N. C. 616, 23 S. E. 264, 53 Am. St. 611, 30 L. R. A. 257; *Cameron v. Union Trunk Line,* 10 Wash. 507, 39 Pac. 128; *Malstrom v. Northern Pac. R. Co.,* 20 Wash. 195, 55 Pac. 38; *Steele v. Northern Pac. R. Co.,* 21 Wash. 287, 57 Pac. 820. And the bell must be rung continually. *Whiton v. Chicago etc. R. Co.,* Fed. Cases, 17,597; *Texas etc. R. Co. v. Watkins* (Tex.), 26 S. W. 760; *Morgan v. Wabash R. Co.,* 159 Mo. 262, 60 S. W. 195. It is not contributory negligence *per se* to go on a railroad trestle. *Troy v. Cape Fear etc. R. Co.,* 99 N. C. 298, 6 S. E. 77, 6 Am. St. 521; *Mitchell v. Tacoma R. & Motor Co.,* 13 Wash. 560, 43 Pac. 528; *Frazer Adm. v. South & North Ala. R. Co.,* 81 Ala. 185, 1 South. 85, 60 Am. Rep. 145; *Redford v. Spokane etc. R. Co.,* 15 Wash. 419, 46 Pac. 650. Nor was plaintiff guilty of contributory negligence as a matter of fact. *Whiton v. Chicago etc. R. Co., supra; Chisholm v. Seattle Elec. Co.,* 27 Wash. 237, 67 Pac. 601. The doctrine of the "Last clear chance" originated in the case of *Davies v. Mann,* 10 M. & W. 546. This is a mere development of the doctrine of remote and proximate cause. *Roberts v. Spokane St. R. Co.,* 23 Wash. 325, 63 Pac. 506, 54 L. R. A. 184. Upon the doctrine of the "Last clear chance" the defendant was liable. 55 Central Law Journal p. 289; Shearman & Redfield, Negligence (5th ed.), §§ 99, 100; Patterson, Railway Accident Law, p. 51. The following are a few of the leading cases on the "Last clear chance." *Bogan v. Carolina Cent. R. Co.,* 129 N. C. 154, 39 S. E. 808,

55 L. R. A. 418; *Davies v. Mann, supra; Morgan v. Wabash R. Co.,* 159 Mo. 262, 60 S. W. 195; *Tully v. Philadelphia* etc. *R. Co.,* 2 (Penn.) Del. 537, 47 Atl. 1019, 82 Am. St. 425; *Crowley v. Louisville* etc. *R. Co.,* 21 Ky. Law 1434, 55 S. W. 434; *Cincinnati* etc. *R. Co., v. Kassen,* 49 Ohio St. 230, 31 N. E. 282, 16 L. R. A. 674; *Grand Trunk Ry. v. Ives,* 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485. The doctrine is approved in the following cases, and it is always a question of fact for the jury and not of law for the court. *Frazer v. South* etc. *R. Co.,* 81 Ala. 185, 1 South. 85, 60 Am. Rep. 145; *Meeks v. Southern Pac. R. Co.,* 56 Cal. 513, 38 Am. Rep. 67; *Fox v. Oakland* etc. *R. Co.,* 118 Cal. 55, 50 Pac. 25, 62 Am. St. 216; *Isbell v. New York* etc. *R. Co.,* 27 Conn. 393, 71 Am. Dec. 78; *Oliver v. Denver Tramway Co.,* 13 Colo. App. 543, 59 Pac. 79; *Bullard v. Southern R. Co.,* 116 Ga. 644, 43 S. E. 39; *Chicago* etc. *R. Co. v. Ryan,* 131 Ill. 474, 23 N. E. 385; *Neet v. Burlington* etc. *R. Co.,* 106 Iowa 248, 76 N W. 677; *Lampkin v. McCormick,* 105 La. 418, 29 South. 952, 83 Am. St. 245; *Atwood v. Bangor* etc. *R. Co.,* 91 Me. 399, 40 Atl. 67; *Baltimore Consol. R. Co. v. Rifcowitz,* 89 Md. 338, 43 Atl. 762; *Bunting v. Central Pac. R. Co.,* 16 Nev. 277; *Felch v. Concord R. Co.,* 66 N. H. 318, 29 Atl. 557; *Patton v. East Tenn. R. Co.,* 89 Tenn. 370, 15 S. W. 919, 12 L. R. A. 184; *Law v. Missouri* etc. *R. Co.,* 29 Tex. Civ. App. 134, 67 S. W. 1025; *Shaw v. Salt Lake City R. Co.,* 21 Utah 76, 59 Pac. 552; *Virginia* etc. *R. Co. v. White,* 84 Va. 498, 5 S. E. 573; *Redford v. Spokane* etc. *R. Co., supra; Malstrom v. Northern Pac. R. Co., supra; Roberts v. Spokane St. R. Co., supra; Inland* etc. *Co. v. Tolson,* 139 U. S. 551, 11 Sup. Ct. 653, 35 L. Ed. 270; *Louisville* etc. *R. Co. v. Tennessee R. Co.,* 60 Fed. 993; *Texas* etc. *R. Co. v.*

*Nolan,* 62 Fed. 552; *Baltimore etc. R. Co. v. Anderson,* 85 Fed. 413; *Baltimore etc. R. Co. v. Hellenthal,* 88 Fed. 116; *Radley v. London R. Co.,* 1 App. Cases, 754. There is certainly room for reasonable men to draw different conclusions as to the negligence of the defendant and the contributory negligence of the plaintiff, or as to the proximate cause of the injury. *McQuillan v. Seattle,* 10 Wash. 464, 38 Pac. 1119, 45 Am. St. 799; *Smith v. Spokane,* 16 Wash. 403, 47 Pac. 888; *Nelson v. Willey Steamship etc. Co.,* 26 Wash. 548, 67 Pac. 237; *Steele v. Northern Pac. R. Co.,* 21 Wash. 287, 57 Pac. 820; *Burian v. Seattle Elec. Co.,* 26 Wash. 606, 67 Pac. 214; *Mischke v. Seattle,* 26 Wash. 616, 67 Pac. 357; *Goe v. Northern Pac. R. Co.,* 30 Wash. 654, 71 Pac. 182.

*James F. McElroy, B. S. Grosscup,* and *Piles, Donworth & Howe,* for respondents.

FULLERTON, C. J.—This is an action for personal injuries. From the record it appears that the respondent the Columbia & Puget Sound Railroad Company had constructed a railroad track extending from First Avenue South, in the city of Seattle, eastward between Dearborn and Charles Streets to the main terminal tracks of the Northern Pacific Railway Company, which was used by the latter company as a switching track, and a track upon which it occasionally stored or left its cars. The track was constructed originally on a trestle over the waters of Elliott Bay, and stood some 18 or 20 feet above the water at low tide, but the space had been filled in, from time to time, underneath the track, until the distance was somewhat lessened, averaging perhaps twelve feet at the time of the appellant's injury, which happened on the 25th day of June, 1902. The track, when not obstructed with cars, furnished a convenient way for those

desiring to pass to and from First Avenue South to the water front, and was extensively used for that purpose, particularly by the employees of several large manufacturing plants situated on the water front. The respondents, although they seem not to have forbidden the use of the trestle by pedestrians, did not invite or encourage travel over it by the manner of its construction. It was made unusually narrow—so narrow, in fact, that, when cars were standing upon it, there was but a very small space beside the cars and the ends of the ties along which a footman could pass, and this was made more difficult of passage by the occasional insertion of short ties, which left gaps in the way, from three to five feet wide, which had to be crossed. Because of its peculiar construction it was known locally as the "slim track." No planks were laid upon it, either between the rails or elsewhere, over which a person could walk, and while it was shown that it was freely used as a passage way when clear, it appeared that it was very seldom that any one crossed over it when cars were standing upon it. Neither of the respondent companies had forbidden, in any public manner, the use of the track as a passage way, nor did they maintain lookouts or guards to warn pedestrians of the times it was going to be put into use by themselves.

On the afternoon of the day above mentioned, the appellant, desiring to cross from First Avenue South to the water front, started over this trestle. At that time it contained several cars, the one closest to him being a large furniture car taking up almost the entire width of the trestle. Beyond it, and towards the Northern Pacific's main track, were several coal cars. When the appellant reached the furniture car, he climbed upon it, and walked its full length along the top, when, seeing the coal cars ahead of him, he retraced his steps and

climbed down to the track on the ladder he used in
getting on to the car.   He then crossed over to the other
side of the track, and looked along the trestle, appar-
ently for the purpose of ascertaining if there was room
to pass along the side of the cars.   He then turned and
started to make his way back to the street.   As he started
back, an engine, which had backed on to the switch from
its opposite end, butted into the standing cars, causing
them to move towards and against the appellant, knock-
ing him over and breaking his leg, and causing the in-
jury for which he sues.

There is some dispute in the evidence as to how far
the cars moved after being struck by the engine, the wit-
nesses for the appellant varying in their estimates from
a foot and a half to ten feet, but the correct distance
is probably a little more than the lesser, and much less
than the greater, estimate, probably three or four feet.
There would seem, however, to be nothing unusual in the
fact that the cars moved when struck by the engine, or in
the fact that they were so struck; it was simply the usual
method of making a coupling where an engine couples on
to a train of standing cars.

At the moment the engine struck the cars, the appel-
lant was in a position where he could have been seen from
the engine, had a lookout been maintained for him.   How
long he had been in that position can only be conjec-
tured, but at most it could have been but a short space
of time.   When he was on top of the box car, he was
in view, also, from the end of the switch that the engine
entered.   Where the engine was then is not shown, but
the appellant says he did not see it, and presumably it
was out of sight.   Be this as it may, however, it is ap-
parent that the appellant was in a position to see the
engine at all times when the engineer or fireman could

have seen him, and could easily have protected himself from injury had he but exercised his faculties.

The foregoing is, in substance, the facts as they appeared from the appellant's evidence. At the conclusion of its introduction the respondents challenged its sufficiency, and moved that the case be withdrawn from the jury, and a judgment for the respondents entered. The motion was granted, and this appeal is from the judgment so entered.

The principal controversy between the parties is over the question of their respective relations at the time of the injury. The appellant contends that he was a licensee, on the track of the respondents as of right, and that the the respondents were bound to exercise towards him reasonable care in the movement of their cars so as to protect him from injury, and that the question whether they did exercise such reasonable care, was, under the evidence, a question for the jury, and not for the court. On the other hand, the respondents contend that the appellant was a trespasser, and inasmuch as it was not shown that they had knowledge of his presence on their track, they were liable only in case of such gross negligence on their part as would amount to wantonness, and that there was no proof of any such gross negligence. It is not contended, of course, by the appellant that he had any special permit to use this part of the respondents' track as a footpath, or that the respondents had, by grant or any affirmative act, conferred that right upon the public; but he contends that a license to use it is to be inferred from the fact that large numbers of people had so used it without remonstrance on the part of the respondents.

This court has held, in common with many other courts (*Roth v. Union Depot Co.*, 13 Wash. 525, 43 Pac. 641, 31 L. R. A. 855) that if a railroad company

permits the public for a long time to pass over ·its track
at some given point, or to use it as a footpath between
given points, without objection or hindrance, its consent
or acquiescence in such use would be presumed, and it
was bound to operate its cars with reference thereto.   In
such cases the railroad company and the people have a
common right, or a joint use, in the track as a public
way, and the right of each must be regarded.   But it
is not to be inferred from slight circumstances that a
railway company has granted to the public a joint use
of its track between given points.   The track is con-
structed primarily for the purpose of carrying passen-
gers and freight in cars, and its use as a footpath is
secondary always.   To permit its use as a footpath
greatly increases the danger to those traveling in cars,
and it is not the policy of the law to encourage such use,
and unless a clear right to be upon the track at the given
place is shown, a footman thereon is to be regarded as
a trespasser.   In certain instances, of course, a joint use
must be reserved to the public; for example, the pub-
lic must have the right to cross° at fixed places, and it is
usually held that a public crossing has been acquired by
user on much less evidence than is required to establish
a public way along the track; the one being in nearly
every instance a necessity, while the other is usually
only a mere matter of convenience.   Indeed, in some of
the states it seems to be held that a right of way along
the track cannot be acquired by user merely, unless ·it
be at the station or depot grounds or in the yards, where
the public naturally resort.   As was said by the supreme
court of Wisconsin in *Anderson v. Chicago etc. R. Co.*,
87 Wis. 195, 58 N. W. 79, 23 L. R. A. 203: ·

"It has frequently been held in this and other states
that where the grounds of a railway are used by pedes-

trians for a considerable time without objection, or with acquiescence on the part of the company, a pedestrian crossing over the same thereby becomes a licensee, and is no longer to be considered as a mere trespasser acting at his peril, and that it is the duty of the company to exercise increased prudence and caution in operating its road at such point, and to keep a reasonably vigilant lookout to prevent injury or accident to those so crossing its grounds [citing cases]. In all these cases the injury occurred at the station or on the depot grounds or yard, where parties would naturally resort and cross over the same, and where the agents and servants of the company could exercise a proper degree of care and watchfulness under the circumstances; but we have not met with any case, in which the point was necessary to the decision, where it has been held that a license can be implied from such acts of frequent use by pedestrians or wayfarers of the main track or bridges or trestles distant from such places as a pathway for travel, though we find that in other states the rule of implied license has been applied to parties frequently crossing the track at particular points other than regular crossings."

See, also, *Schug v. The Chicago etc. R. Co.,* 102 Wis. 515, 78 N. W. 1090; *Spicer v. Chesapeake & O. R. Co.,* 34 W. Va. 514, 12 S. E. 553, 11 L. R. A. 385; *Ward v. Southern Pac. Co.,* 25 Or. 433, 36 Pac. 166, 23 L. R. A. 715; *Brown's Adm'r. v. Louisville etc. R. Co.,* 97 Ky. 228, 30 S. W. 639. But if the rule be otherwise in this state as to the right to acquire a joint right along the track, such right is only acquired by use so definite and long existing as to clearly impute acquiescence on the part of the railroad company in such use. The very slight use made of the trestle in question here by pedestrians, when cars were standing upon it, can not be held to confer such a joint right.

We conclude, therefore, that the appellant, at the time of his injury, was a trespasser, and that the defendants

could be held liable for such injury only in case their conduct was so grossly negligent as to amount to wantonness. *Matson v. Port Townsend etc. R. Co.*, 9 Wash. 449, 37 Pac. 705. The record in the case before us shows nothing of wantonness or wilfulness on the part of the defendants. It is not in evidence that the servants of respondents observed the presence of the appellant on the track, or that they had any reason to suspect it, and they owed him no duty to look out for him. His injury, for that reason, although lamentable, must be held to be the result of his own negligence rather than because of the default of the respondents.

This view of the relation of the parties renders it unnecessary to discuss the other questions suggested in the argument of the appellant. The "Last clear chance" theory, so ably briefed, can have no application, because there are no facts upon which it can be based. It was not a duty of the respondents to ascertain whether the appellant was behind the car before making the coupling, even though they did know that to do so would move the car a few feet. The appellant was a trespasser, he was where he had no right to be, and it was his duty to protect himself from being injured by movements of the cars, which he must have known were liable to occur at any time. The respondents would have been liable had they actually known of his whereabouts, and had, notwithstanding such knowledge, negligently backed the car upon him, but there is no evidence in the record from which the fact that they did know of his whereabouts, or knew that to move the car would likely injure him, can be inferred; hence there is no room to apply the doctrine contended for.

The judgment is affirmed.

HADLEY, DUNBAR, and MOUNT, JJ., concur.