[No. 5326.    Decided March 11, 1905.]

BEN F. HAMLIN *et al., Respondents,* v. COLUMBIA & PUGET SOUND RAILROAD COMPANY, *Appellant.*[1]

RAILROADS—DEATH OF PEDESTRIAN ON RIGHT OF WAY—TRESPASSER OR LICENSEE—EVIDENCE—SUFFICIENCY—NONSUIT.    A pedestrian on a railroad right of way is a trespasser, to whom the company owes no duty as a licensee, in the absence of wilful or wanton neglect, where it appears that she and her family and a few villagers were in the habit of walking upon the track to a post office three-fourths of a mile from her home, that notices were posted along the right of way warning trespassers of the danger of walking thereon, and that there was a public road that might have been taken almost parallel to the railroad, no express license to use the track having been given.

SAME — PEDESTRIAN'S DEAFNESS — CONTRIBUTORY NEGLIGENCE. Where a person is very deaf, she is guilty of gross negligence in walking upon a railroad right of way without keeping a constant lookout for a daily train that had been in the habit of passing her home for years.

Appeal from a judgment of the superior court for King county, Griffin, J., entered April 18, 1904, upon the verdict of a jury rendered in favor of the plaintiffs in an action for causing the death of a pedestrian upon a railroad right of way. Reversed.

*Piles, Donworth & Howe* and *C. H. Farrell* ( *Dallas V. Halverstadt,* of counsel), for appellant.

*F. E. Knowles* and *Frank H. Knapp,* for respondents.

[1] Reported in 79 Pac. 991.

RUDKIN, J.—For a number of years prior to the 14th day of March, 1903, the defendant, Columbia & Puget Sound Railroad Company, operated a railroad through the village of Cedar Mountain in King county. On the above date, and for some few years prior thereto, Cedar Mountain was a deserted mining camp. The entire population of the place consisted of a few families. The railroad in question was principally used as a logging and coal road. As the railroad approaches Cedar Mountain, in the direction of Seattle, it rounds a curve in close proximity to Cedar Mountain, and passes through a cut within a few hundred feet of the post office at the latter place. On the morning of the above date an engine, drawing four cars, backed up the railroad toward Cedar Mountain, at a velocity of about fifteen or sixteen miles per hour, as had been the custom every day for a period of about five years.

Mrs. Hamlin, wife of the plaintiff J. D. Hamlin, and the mother of the other plaintiffs, together with her family, had lived about three-fourths of a mile from Cedar Mountain, in the direction of Seattle, on the line of said railroad, for a period of about four years prior to March 14, 1903. On the morning of that day, she started from her home to the post office, at Cedar Mountain, and, as she reached a point on the railroad track a short distance from the post office, she was struck by the above train, and instantly killed. None of the train crew saw or observed the deceased on the track before the accident. There was but one eye-witness to the accident, and he testified on the part of the plaintiffs. This witness saw the deceased coming along the railroad track in the direction of Cedar Mountain, and the next instant saw the train approaching from the same direction, behind the deceased. She was struck by the train and killed as above stated.

29-37 WASH.

This witness was from five hundred to one thousand feet further from the train than the deceased, and both saw and heard the train before it struck her. There was nothing to prevent the deceased from seeing the approaching train for a distance of three hundred feet before it struck her, had she looked. The deceased was forty-nine years of age at the time of her death, and was quite deaf.

There was a public road leading from the home of the deceased to Cedar Mountain, almost parallel with the railroad track. The deceased, her husband, and children, and the few villagers and school children resident in and about Cedar Mountain, had been in the habit of using the railroad track as a footpath, in going to, and returning from, Cedar Mountain, for a number of years prior to the accident. It is not claimed that any of these parties had an express license to use the railroad track as a footpath, nor is it claimed that they had ever been forbidden to use it by any officer or agent of the defendant company. There were signs on the right of way, on either side of Cedar Mountain, and at different places along the track, warning the public not to walk upon the track, and cautioning them against danger. Some of the witnesses for the plaintiffs claimed that these signs were only placed at crossings, and that the warning only applied to such places. This action was brought to recover damages for the wrongful act of the defendant in causing the death of the deceased. The plaintiffs had judgment below, and defendant appealed therefrom.

The principal question discussed on this appeal is, was the deceased a licensee upon the track, or was she a trespasser there, at the time she met her death? We think this case is controlled by *Dotta v. Northern Pac. R. Co.*, 36 Wash. 506, 79 Pac. 32. The extent of the use of the

track by foot-passengers in that case is thus stated in the opinion of the court:

"The track, when not obstructed with cars, furnished a convenient way for those desiring to pass to and from First Avenue South to the water front, and was extensively used for that purpose, particularly by the employees of several large manufacturing plants situated on the water front. The respondents, although they seem not to have forbidden the use of the trestle by pedestrians, did not invite or encourage travel over it by the manner of its construction. It was made unusually narrow—so narrow, in fact, that when cars were standing upon it, there was but a very small space beside the cars and the ends of the ties along which a footman could pass, and this was made more difficult of passage by the occasional insertion of short ties, which left gaps in the way from three to five feet wide, which had to be crossed. Because of its peculiar construction it was known locally as the 'slim track.' No planks were laid upon it, either between the rails or elsewhere, over which a person could walk, and, while it was shown that it was freely used as a passageway when clear, it appeared that it was very seldom that any one crossed over it when cars were standing upon it. Neither of the respondent companies had forbidden in any public manner the use of the track as a passageway, nor did they maintain lookouts or guards to warn pedestrians of the times it was going to be put into use by themselves."

In answer to the contention that such use amounted to a license, the court said:

"But it is not to be inferred from slight circumstances that a railway company has granted to the public a joint use of its track between given points. The track is constructed primarily for the purpose of carrying passengers and freight in cars, and its use as a footpath is secondary always. To permit its use as a footpath greatly increases the danger to those traveling in cars, and it is not the policy of the law to encourage such use, and, unless a

clear right to be upon the track at the given place s shown, a footman thereon is to be regarded as a trespa ser. In certain instances, of course, a joint use must be reserved to the public; for example, the public must have the right to cross at fixed places, and it is usually held tha t a public crossing has been acquired by user on much less evidence than is required to establish a public way along the track; the one being in nearly every instance a necessity, while the other is usually only a mere matter of convenience. Indeed, in some of the states it seems to be held that a right of way along the track cannot be acquired by user merely, unless it be at the station or depot grounds or in the yards, where the public naturally resor [citing cases]. But, if the rule be otherwise in this state, as to the right to acquire a joint right along the track, such right is only acquired by use so definite and long existing as to clearly impute acquiescence on the part of the railroad company in such use. The very slight use made of the trestle in question here by pedestrians, when cars were standing upon it, cannot be held to confer such a joint right. We conclude, therefore, that the appellant, at the time of his injury, was a trespasser, and that the defendants could be held liable for such injury only in case their conduct was so grossly negligent as to amount to wantonness."

If a court should permit a jury to find that such use as was shown in this case amounts to a license, the necessary effect will be to impress every foot of railroad throughout the settled portions of the country with a license in favor of foot passengers. It is a matter of common knowledge that all railroads are used to a greater or less extent by foot passengers, unless such passengers are absolutely excluded therefrom by barriers or by force. In this case the company had notices posted along its right of way warning trespassers of the danger of walking on the track, and the track itself was a continuing notice and warning

against such danger. The hearing of the deceased was so far impaired that she was compelled to use an ear trumpet in ordinary conversation. When such a person walks along a railroad track, without a continual exercise of vigilance for approaching trains, she takes her life in her hand and invites disaster. The deceased was, therefore, a trespasser on the right of way, and was guilty of gross negligence which contributed directly to her injury and death. There can be no serious claim of wilful or wanton negligence on the part of the appellant, and there is, therefore, no liability for the unfortunate accident complained of.

The judgment is reversed, with directions to dismiss the action.

MOUNT, C. J., FULLERTON, HADLEY, and DUNBAR, JJ., concur.

ROOT and CROW, JJ., took no part.