DETERMINED IN THE

# SUPREME COURT

OF

# WASHINGTON

[No. 8231. Department Two. March 25, 1910.]

## SARAH J. MOORE et al., Respondents, v. GREAT NORTHERN RAILWAY COMPANY, Appellant.[1]

RAILROADS—CROSSINGS—DEFECTS — DEATH — CAUSE — EVIDENCE—SUFFICIENCY. The evidence is insufficient to show that the death of a drayman, who fell from his wagon and was killed while driving across a railroad track, was due to a defective crossing, because too narrow and the rails too high and liable to cause the wagon to slew to one side when crossing at an angle, where it appears that the crossing was fourteen feet wide, that there was no occasion for the drayman to drive across at an angle, and that he had attempted to cross the track a few feet east of the crossing prepared by the railroad company; there being no liability where one negligently turns aside from a crossing prepared and uses another way.

Appeal from an order of the superior court for Lincoln county, Neal, J., entered April 29, 1909, granting a new trial, after dismissing the jury and directing judgment in favor of the defendant, in an action for wrongful death. Reversed.

*F. V. Brown* and *J. J. Lavin,* for appellant.

*W. E. Southard* and *Southard & Southard,* for respondents.

MOUNT, J.—Respondents brought this action to recover damages on account of alleged negligence of the appellant,

[1]Reported in 107 Pac. 852.

which negligence it is alleged caused the death of Michael
Schabb, the father of Jennie Schabb and, at the time, the
husband of respondent Sarah J. Moore. The cause was tried
to the court with a jury, and resulted in the discharge of the
jury and a directed judgment for the defendant. There-
after the respondents filed a motion for new trial upon sev-
eral grounds. The motion was based upon the record of the
case and affidavits of newly discovered evidence. This mo-
tion was not heard by the judge who tried the case, but was
heard by his successor upon the record which is now before
us. The court made an order granting a new trial without
specifying the ground therefor. This appeal is from the
order granting the new trial.

The case is presented here solely as one of law, to the effect
that, under all the facts which were received and offered in
evidence at the trial and those discovered after the trial, no
case is made out sufficient to go to the jury. No other ques-
tion is presented. The facts are as follows: The appel-
lant in the year 1905 maintained a station or depot in the
town of Wilson Creek. A railway track, called a house
track, extended east and west on the north side of this depot.
The town is north of this house track. On the east side of
the depot and to the south of the house track, there was an
L-shaped platform, the short end of the L or platform be-
ing at right angles to the house track and near to it. The
long side of the platform extended east and west parallel
with the house track and about thirty-three to thirty-six feet
distant therefrom. This platform was about three feet high.
The space between the house track and the platform was
covered with soft cinders. At the northeast corner of the
depot, where the west end of the platform was nearest the
house track, a crossing had been constructed and maintained
by the railroad company for the use of teams in going to
and from the platform. This crossing was made by laying
boards lengthwise of the rails on the railroad ties, on both
sides and between the rails. These boards were about six-

teen feet long. They were not thick enough by two or three inches to come to the level of the tops of the rails. Some steps extended from the platform to the ground at the northeast corner of the depot near this crossing, so that the length of the crossing was reduced about two feet, leaving about fourteen feet space for the crossing.

On the evening of December 26, 1905, the deceased, Michael Schabb, who was a drayman, hauled some trunks from the residence part of town to the depot. He drove over the crossing, made a turn of his wagon in the angle of the platform, and backed his wagon up against the long part of the platform. He unloaded the trunks and attempted to drive away. It was quite dark, but he was seen to drive away. After he had gone but a few feet the wheels of the dray were heard to strike the rails of the house track, and were seen to "slew to one side," and Mr. Schabb "was hurled suddenly out of the dray, apparently over the front end thereof." The team of horses moved up a few feet and stopped. The witness who saw this paused for a moment, and, concluding that Mr. Schabb was not hurt, passed into the depot. A few minutes later Mr. Schabb was found dead under the left front wheel of his wagon. His neck was broken. He had attempted to cross over the railroad tracks a few feet east of the crossing prepared by the railway company.

It is alleged, that the appellant was negligent for the reason that the crossing was defective, in that the rails extended above the planking so that it made the crossing dangerous; that the crossing was located too close to the depot and did not extend a sufficient distance to the east. It is argued by the respondents that the space between the platform and the house track was too narrow, and the soft cinders thereon made it difficult for teams to turn around therein. The appellant argues that the facts are insufficient to go to the jury, because (1) it is not shown that the decedent came to his death by reason of being jolted from his wagon, and

the cause of death is mere conjecture; (2) because it is not shown that the condition of the crossing caused the decedent to attempt to cross at the place where he did, and (3) because the deceased attempted to cross the rails at a place other than the one prepared for such purpose.

These last two positions must be sustained. The fact that the space between the house track and the platform was narrow and soft, so that it was difficult for teams to turn around therein, is of no importance in this case, because it was shown by the respondents' evidence that the deceased did turn his team around and back his wagon so that the rear thereof was against the platform where he unloaded his trunks. It is plain, therefore, that the deceased could readily have driven out over the crossing the same way he drove in. It is true there is some evidence to the effect that wagons frequently "slewed" when an attempt was made to cross the rails at an angle, and this is no doubt a fact. But there is no evidence in the record to show that a wagon once turned around could not be driven out over the regular crossing without crossing the rails at an angle, and there is no evidence that it was necessary for the deceased to attempt to cross the rails at the place where he did, viz., three or four feet to the east of the crossing which the company maintained. The crossing was at the corner of the platform nearest the depot building. It was sixteen feet in length, but some steps leading from the platform occupied two feet of this length, leaving the driveway fourteen feet in width. This was clearly sufficient for the purpose for which it was used or intended.

If the deceased had used this crossing and, by reason of its defective or dangerous condition, had been injured, complaint then might be made that the company was negligent; but when it is shown and conceded that he attempted to cross in another place, not used or intended as a crossing, the company may not be held for an injury occurring there, because the negligence of the company was not the cause of

the injury. The reason why the deceased attempted to drive his wagon across the rails of the track rather than over the crossing is not shown. It was clearly more dangerous to attempt to cross the rails where no crossing was prepared, than it was to attempt to cross where a crossing was constructed for that purpose. No excuse is attempted, excepting the fact that it was difficult to turn a wagon, such as deceased used, in the narrow space and soft cinders between the house track and the platform. But this excuse failed when it was shown that he did turn his wagon, which was backed up against the platform, before he started away. Where a railroad company has prepared a crossing over its rails, this is an invitation to the public to make use of such crossing, and the company would be liable to a person injured in using such crossing while exercising ordinary care, if the crossing proved to be unsafe for any cause of which the company was bound to take notice. If a person voluntarily or negligently turns aside from such crossing, and uses another way which is not held out as a crossing and which is obviously more dangerous, there is no liability on the part of the company. 33 Cyc. 929; Thompson, Negligence, § 6269; *Carey v. Inhabitants of Hubbardston*, 172 Mass. 106, 51 N. E. 521; *Kelley v. Town of Fond Du Lac*, 31 Wis. 179; *Tasker v. Farmingdale*, 85 Me. 523, 27 Atl. 464. This is a reasonable rule, and the facts in this case are controlled by it. It is not claimed that the deceased could not see the crossing, or that the company was negligent in any other respects than those above mentioned.

Under all the facts in the case, there is no liability against the appellant, and the order granting the new trial is therefore reversed, and the cause ordered dismissed.

Rudkin, C. J., Crow, Parker, and Dunbar, JJ., concur.