[No. 13134. Department One. February 7, 1916.]

DAISY D. IMLER et al., *Appellants*, v. NORTHERN PACIFIC RAILWAY COMPANY et al., *Respondents*.[1]

RAILROADS—LICENSEE ON TRACK—DUTY OF COMPANY. A railroad company owes the duty to a licensee walking upon a track pursuant to an established custom to keep a reasonable lookout in advance, and a reasonable effort to avoid injury after discovering his presence on the track.

SAME—LICENSEES—DOUBLE TRACK—RUNNING AGAINST TRAFFIC. A railroad company's duty to a licensee upon the track to keep a reasonable lookout and make reasonable effort to avoid injury after discovering his presence does not require the company to run its trains on a double track in the customary direction, and such a licensee may not assume without looking that trains will not be run "against traffic."

SAME—LICENSEES—NEGLIGENCE—FAILING TO DISCOVER PRESENCE. Where a licensee was not shown to have been walking on the track, and may have stepped from the right of way directly in front of the engine, negligence in failing to discover his presence cannot be imputed to the engineer from the fact that he had an unobstructed view of the track.

Appeal from a judgment of the superior court for Thurston county, Claypool, J., entered March 31, 1915, upon granting a nonsuit, dismissing an action for wrongful death, tried to the court and a jury. Affirmed.

[1]Reported in 154 Pac. 1086.

*Hugo Metzler, Ben S. Sawyer,* and *Gordon & Easterday,* for appellants.

*Geo. T. Reid, J. W. Quick,* and *L. B. da Ponte,* for respondents.

CHADWICK, J.—Joseph Imler, while walking along the track of the defendant railway company on the evening of the fourth of November, 1912, was struck and killed by one of the defendant's work trains. The place of the accident was between the stations of Centralia and Bucoda, where the company maintains a double-track railway which is fenced and guarded at all proper places with cattle guards.

Imler had been at work during the day at a farm about a mile and a half south of Bucoda, where he lived. He left the place of his employment about dusk and followed a road or footpath to the right of way of respondent company. He entered on the right of way either through, or by climbing over, a gate which had been left for the convenience of the owner of the land, the place having been formerly maintained as a private crossing. The crossing had been abandoned about three years before when the company double tracked its road. The gates had not been removed. Imler had apparently gone but a short distance in the direction of Bucoda when he was struck and killed.

The testimony shows, notwithstanding the fact that respondent maintained a double-track railroad, a part of its transcontinental system over which some forty trains passed each way every day, and with the track properly guarded, that the people in the neighborhood had for a long time been accustomed to use the right of way and the tracks as a footpath in going to and from their homes situated near the tracks. At times some had ridden bicycles along and between the tracks. One witness testifies that he had ridden a motorcycle, and another that he had seen a man riding along the tracks on horseback.

It is contended by the appellants that the use of the tracks and the right of way by the public in the manner indicated had continued for so long a time that a license to use the tracks as a footpath is implied, and respondent did not use that degree of care which it owed to deceased as a licensee and is liable to answer in damages.

Negligence is charged in that respondents' train was running against traffic, that is, running north on the south-bound tracks; that the headlight was not burning or was so defective as to give no warning; that the train was running at an excessive rate of speed (the testimony does not sustain a finding that it was running more than thirty-five miles an hour); that, at the time of the happening of the accident, a north-bound passenger train equipped with a powerful electric headlight, and with cars and coaches brilliantly lighted, was going north on the north-bound track; that the lights from the passenger train sufficiently lighted the track and that portion of the right of way upon which the deceased was walking to enable the engineer and fireman to see and observe him in time to give him warning of his peril; and further, that the noise and light caused by the passing of the passenger train held the attention of the deceased, and he relied upon the fact that the west track was habitually used by south-bound trains, and was induced to believe that the south-bound track was, and would be, free and clear of obstructions from behind, and the light and noise and confusion of the passenger train made it impossible for him to hear and discover the approach of the work train.

It is shown that deceased was about forty-five years of age, in the possession of all of his faculties, and had, at one time, been a section hand working along the track where he was killed, and hence had knowledge of the frequent use of the tracks. As material to the history of the case although not a fact essential to our holding, there was a public highway leading into Bucoda at about the same distance from the place where the deceased was working as was the railroad

track. At the close of plaintiff's testimony, the trial judge took the case from the jury and entered a judgment of nonsuit.

Much of the briefs are taken up with the discussion of the inquiry as to whether deceased was a trespasser or licensee. We shall not inquire whether deceased was a trespasser. We shall assume that he was a licensee, although it may well be doubted whether any person can claim a license to use a railway track, more especially the double-track of a transcontinental system over which trains run with great frequency, as a footpath where, as in this case, the track is laid in the open and between stations and is fenced and guarded. Under such circumstances, it has been held that a use, however long continued, will not imply a license. *Burg v. Chicago, R. I. & P. Co.*, 90 Iowa 106, 57 N. W. 680, 48 Am. St. 419; *Ward v. Southern Pac. Co.*, 25 Ore. 433, 36 Pac. 166, 23 L. R. A. 715. And such would seem to be the logical result of the opinion of this court in the case of *Hamlin v. Columbia & Puget Sound R. Co.*, 37 Wash. 448, 79 Pac. 991, and *Dotta v. Northern Pac. R. Co.*, 36 Wash. 506, 79 Pac. 32. The duty of a railroad company to a licensee is defined in the case of *McConkey v. Oregon R. & Nav. Co.*, 35 Wash. 55, 76 Pac. 526, as follows:

"In the case of the licensee the company when moving trains is charged with the additional duty of being in a state of expectancy as to the probable presence of persons upon the track at places where travel thereon is known to be customary and frequent. The care required in the case of the licensee, therefore, calls for both reasonable lookout in advance and a reasonable effort to avoid injury after presence is discovered."

The determinative question is, therefore, whether the engineer and fireman, or either of them, discovered the presence of the deceased and his peril in time to avoid the accident.

There is no testimony that would warrant us in holding that respondents' agents were remiss in the performance of

their duty to the deceased, that is, to keep a lookout and avoid any wanton or willful injury. The engineer testifies that he was keeping a lookout, and that he did not see the deceased until just the moment he was struck. This is not disputed by the testimony of any one, nor do we find the physical or admitted facts to be contrary to his declaration.

In *Spicer v. Chesapeake & O. R. Co.*, 34 W. Va. 514, 12 S. E. 553, 11 L. R. A. 385, a recovery was denied under the following state of facts:

"He is not at a street crossing, but purely for his own convenience is walking on the track from Sixteenth to Twentieth street; and, seeing a train moving towards him on the track on which he is walking, he steps upon the next track; and being blinded by the headlight of the engine approaching, and his hearing dulled by it, or more likely because he did not look for a train on the track to which he stepped, he is scarcely on that track before he is struck by a train which is being backed from the depot to the shops, receiving injury, from which he dies in about an hour. No one questions that the company was simply exercising on ground belonging to it, its lawful business, and that the deceased was not in the public highway, but using the track for his own convenience, when he could have used a walk or path but a few yards distant, outside the tracks, or an alley but a short distance further away. What duty did the company owe him under these circumstances except that it should not wilfully or wantonly hurt him? Where could the deceased have found a more deadly, dangerous walk? And he was fully aware of this, for he was an employe of the company, was well acquainted with the yard and works of the company there, but not in service in the yard nor on duty then or there. Indeed, his daily contact and familiarity with the railroad operations lulled him into a feeling of security and negligence which cost him his life, when but twenty-one or twenty-two years of age. He was in possession of all the natural senses and faculties which tell of danger, and aid us in self-preservation amid perils surrounding us."

Although there is no testimony to sustain it, we think the assumption of appellants, as set forth in that part of their complaint describing the presence of the passenger train, is

a fair theory of the immediate circumstances and conditions. The deceased was evidently on the west side of the west track when struck, for the bruises on his body indicate that he was struck just above the hip by the pilot beam. At the time, the two trains were running nearly parallel, and the deceased must have assumed that the passenger train was the only train approaching, and there being an utter absence of testimony that he had been walking for any distance on either track, he must have stepped up on the ties immediately in front of the work train without looking, resting upon the assumption that a train on the west track, if any, would come from the north and not from the south. It follows that the only contention that can be advanced with any show of reason is that respondent was bound to operate its trains "with traffic" in all instances, and that licensees may rest secure in the belief, and act upon it without looking, that all trains will move in the customary manner. Whatever the rights of a licensee may be, railroad tracks are laid for the convenience of those who operate them and the public which employs them and those who ride upon their cars. A licensee cannot, from the nature of things, having in mind the public duty of the carrier, assume that a railroad company will not, or may not, use its property as will best serve, or as may be necessary at times to serve, its primary purposes. It cannot be held guilty of negligence if, in the performance of its functions as a public carrier, it suspends its own rules for the time being for the movement of its trains and sends a train forward against traffic. We might as well hold that a train running ahead of time or behind time would have to flag its way to protect those who were accustomed to use its track as a footpath in country districts. For, if appellants' theory be good, a licensee might as well rest under the assumption that if a train did not pass the point of his use at a given time, or upon schedule time, it would have no rights which he was bound to respect or to take notice of.

In all cases, then, we come to the one question, whether the company kept a lookout, and whether the presence of the licensee was discovered in time to prevent the accident. As we have said, the testimony in this case not only does not sustain such a finding, but is contrary to it. The fact is apparent and conclusive that the deceased acted upon the assumption that but one train was approaching from the south and that the west track was clear. Such assumptions find no favor in the law. A similar contention was made in *Boulden v. Louisville & N. R. Co.* (Ky.), 112 S. W. 936. The court there held that the company had a right to run its trains on either of the two tracks.

"The court properly instructed the jury that the defendant had the right to use either track, as otherwise they might have thought it negligent for the defendant to run the train in question on the east track. Persons who walk along a railroad track are under obligations to keep out of the way of trains, and they cannot complain that the train is run on one track and not on another. There was nothing in the plaintiff's conduct to apprise the operatives of the train that he was ignorant of its approach, or to impose upon them the duty of taking extra precautions for his safety, until he, without looking back to see if the train was coming, suddenly placed himself in peril when the train was right upon him."

See, also, *Morgan v. Northern Pac. R. Co.*, 196 Fed. 449.

In *Northern Pac. R. Co. v. Jones*, 144 Fed. 47, instead of running against traffic, a train was running off its schedule. The court in holding that the company was not negligent in so operating its trains, said:

"In *Louisville & N. Ry. Co. v. McClish*, it was said: 'Even in the case of a licensee, there is, under such circumstances, the highest duty to exercise the utmost degree of vigilance in looking out for approaching engines or cars. . . . The track is the property of the railroad company, which it has the legal right to use at any and all times.'

"The rule is well established that it is the duty of a traveler to stop and look and listen before crossing or walking

along a railroad track. He has no right to assume at any time of the day or night that trains will not be run over the track. *Railroad Company v. Houston*, 95 U. S. 697, 24 L. Ed. 542; *Schofield v. Chicago & St. P. Ry. Co.*, 114 U. S. 615, 5 Sup. Ct. 1125, 29 L. Ed. 224; *Northern Pacific Railroad v. Freeman*, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014.

"Said the court in *Elliott v. Chicago, M. & St. P. Ry. Co.*, 150 U. S. 248, 14 Sup. Ct. 85, 37 L. Ed. 1068: 'The track itself, as it seems necessary to iterate and reiterate, is itself a warning. It is a place of danger. It can never be assumed that cars are not approaching on a track, or that there is no danger therefrom.'

"The defendant in error was a miner of the age of 34 years, and was in the full possession of his senses. According to his own testimony, he walked upon the railroad track a distance of more than half a mile without once looking back or stopping to listen for an approaching train. In so doing, it must be held that he was guilty of gross negligence, which, irrespective of negligence in the failure of the engineer to discover him on the track, is sufficient to bar his right of recovery. It was no excuse for his failure to take such precautions that the wind was blowing in his face, or that the noise of a waterfall may have deadened the sound of an approaching train. Those circumstances only render the use of his senses the more imperative. It was his duty continually to exercise vigilance."

We attach no importance to the contention that the headlight on the train was not burning, or was so dim as to afford no protection to the deceased. There is no testimony even tending to show that the lack of a headlight or its defective character was the proximate cause of the injury. Appellants' testimony shows that the electric headlight of the passenger train illuminated the track and the right of way. Another headlight would have added no security to the deceased.

Appellants rely principally on the cases of *Roth v. Union Depot Co.*, 13 Wash. 525, 43 Pac. 641, 44 Pac. 253, 31 L. R.

A. 855; *Northern Pac. R. Co. v. Baxter*, 187 Fed. 787, and *Great Northern R. Co. v. Thompson*, 199 Fed. 395, 47 L. R. A. (N. S.) 506. These cases, like many that might be cited, are either crossing cases or cases from cities and towns where population is congested and the public have been accustomed to cross the tracks or to use them as a thoroughfare. Recoveries are allowed in such case because a higher duty rests upon a railroad company under such circumstances. In moving trains over and across the streets of cities, or through depot grounds or in switch yards, the railroad company, from the nature of things, must have its trains under control and be constantly alert to the possibility of injuring persons or property. This is a condition which is generally compelled or regulated by statute or ordinance. But we do not find it to be so held in any of the cases where, as in this case, a fenced and guarded track was used, not as a crossing, but as a footpath, in the country and between stations.

The crossing cases may be further distinguished. They rest in implied license upon legal grounds as differentiated from the acts or conduct of the parties as they may arise in a particular case. In consequence, a duty is put upon the court in all such cases to measure the relative rights as well as the relative obligations of the parties to the action. The company is held to a rule of strict accountability, because it is necessary for men and traffic to cross railway tracks in the pursuit of their legitimate undertakings and conveniences. The law charges a company with a knowledge that they will do so. Whereas, one who walks along a railroad track using it as a footpath, especially where the track is in the country and fenced, cannot claim the protection given to those who do things of necessity, for, from the very nature of things, he is using the track for his personal comfort and convenience. Men must, and therefore may, move from one side of a track to another at places established by the company, or so long used by the public as to imply a license, resting under the as-

sumption of legal right. But the one who does not cross but loiters, or crosses the barriers that have been erected to warn him and save him from the consequences of his folly, can claim no more than that he shall not be wantonly or willfully injured if his peril is discovered in time to prevent his injury. The cases all rest in the same sound principle which controls every exploration into the law of negligence—that is, that the degree of care in every case shall be measured, not by any abstract rule, but by reference to the facts and circumstances attending the particular case.

There is no merit in the contention that the respondents' engineer had an unobstructed view of the track for more than a mile and should have discovered the peril of the deceased. There is no evidence that deceased was on the track, and we cannot hold, as a matter of law, that the engineer was bound to anticipate that a man walking along the right of way would step in front of a railway train without exercising any care for his own safety.

Affirmed.

MORRIS, C. J., FULLERTON, MOUNT, and ELLIS, JJ., concur.