[No. 14568.  Department Two.  May 7, 1918.]

## J. SCHOMMERS, *Respondent*, v. GREAT NORTHERN RAILWAY COMPANY, *Appellant*.[1]

RAILROADS—TRESPASSERS—"LAST CLEAR CHANCE"—EVIDENCE—SUF-FICIENCY. The doctrine of the last clear chance does not apply to a case where a young man, sitting on the edge of a railroad track, was killed by a passenger train, where it appears that the noise of the train could have been heard for three minutes before the accident, and the brakes were set for the emergency stop 600 feet away when the engineer realized that he was not going to get out of the way, and the train brought to a stop within 800 feet; since the mere presence of a trespasser, even if seen, is not alone enough to set the doctrine in motion, as the engineer may assume that a trespasser will take some account of his own safety.

Appeal from a judgment of the superior court for Spokane county, D. F. Wright, J., entered July 18, 1917, granting a new trial, after granting motion for nonsuit, in an action for wrongful death. Reversed.

*Charles S. Albert* and *Thomas Balmer*, for appellant.

*Carl Ultes, Jr.*, for respondent.

CHADWICK, J.—Ray Schommers, son of the respondent, aged sixteen years, had attended a dance at Elmira, Washington, on the night of August 14, 1915. He left the dance between the hours of four and five o'clock in the morning.

There is a public road running west from the town of Elmira, parallel with and adjoining the railroad right of way. The road crosses the track about a half mile west of Elmira, as nearly as the distance can be estimated from the testimony. The boy left Elmira going west on the railroad track. He crossed the highway and went 450 to 500 feet beyond and sat down on

[1]Reported in 172 Pac. 848.

the edge of the track—the end of a tie—where he was seen by an early passerby who drove his team over the track at the crossing and turned west on the highway. This witness says that the boy was sitting in a kind of stupor, holding his head between his hands. At that time the witness had turned west and was about 100 feet from the crossing. His attention was attracted by the steam popping off and the brakes coming on. The first thing he thought of was "what they were stopping for."

This witness heard the rumble of the train about three minutes before the accident. He says that the engineer did not whistle for the crossing but that he began to set the brakes about 100 feet east of the crossing, which would be approximately 600 feet from the point where the boy was killed. He estimated the speed at which the train was going at thirty miles an hour. A locomotive engineer testified that a train going thirty miles and slightly down grade could make an emergent stop in "2,000 to 2,500, maybe 3,000, feet." By deduction and calculation, the train was stopped in 600 feet, plus the length of two coaches and the engine, approximately 800 feet.

The court entertained a motion for a nonsuit and directed a judgment accordingly. Thereafter the court granted a motion for a new trial, and defendant has appealed.

The motion for a nonsuit was granted evidently upon the theory that the deceased was a trespasser and that defendant owed no duty to the deceased other than to refrain from wantonly or wilfully injuring him. .

The motion for a new trial was granted evidently upon the theory that the case fell within the doctrine of the last clear chance, for it is argued here that, although the deceased was a trespasser, the engineer should have seen the boy in time to avoid striking him,

and that it was at least for the jury to say whether the engineer might have seen him in time to appreciate the fact that he was not conscious of his danger and in time to stop his train.

That the rule upon which the nonsuit was granted governs and that respondent cannot recover will not be gainsaid or denied, unless the rule of the last clear chance intervenes to save a right to recover.

The rule of the last clear chance is never dogmatic or self assertive. It arises out of the facts and as a legal consequence of other rules of law. It is no more than a rule of proximate cause (*Mosso v. Stanton Co.,* 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A 943), and is applied or rejected as the facts of the particular case warrant its application or rejection.

Accepting the doctrine, does it apply in the case at bar? We think that it does not, and for reasons which we shall undertake to make plain.

The doctrine assumes, as we shall assume, that the engineer was negligent in that he sounded no warning for the crossing. It matters not in what the negligence consisted, whether of omission or commission. The premise upon which the last clear chance doctrine rests is that both parties are negligent, that one of them is unconscious of his peril, and that the one charged saw, or should have seen and appreciated, the situation of the one injured in time to have avoided the accident. In time, the last clear chance arose when the engineer realized, and should, considering all the facts, have realized, that deceased was in a situation of peril from which he was not likely to extricate himself. We have the time that the engineer realized that the boy was not going to get out of the way fixed to a moral certainty. It was when he cut off the steam and set the emergency.

"The instinct of self preservation and the instinct to refrain from harming others are always present in emergent situations affecting personal security. These impulses prompt that which is done." *Hartley v. Lasater,* 96 Wash. 407, 165 Pac. 106.

We have the place fixed by the only eyewitness testifying that it was about 100 feet east of the crossing, or 550 or 600 feet east of the place where the boy was sitting. The distance may have been 50 or 60 feet further. The testimony is not clear, in that it takes no account of the width of the public road. So that it is certain that the engineer began to stop his train when a distance of about two city blocks away. To hold him to the last clear chance would be to hold, as a matter of law, that the engineer of every train would have to slow down or stop his train whenever he saw a trespasser on the track, whereas the law imposes no such burden. On the contrary, the driver of a locomotive over a track fenced to protect those who operate or travel by train and wholly intended for the use of the railroad may assume that one who is upon the track will take some account of his own safety, at least to the extent of keeping a lookout for passing trains.

Every man who goes upon a railroad track courts danger, but it is not such a danger as will, in and of itself, invite the doctrine of the last clear chance, nor will the law presume that men will walk or sleep or sit down with head bowed on knees and become unconscious in such places.

The mere presence of the deceased would not, therefore, charge the engineer, when 2,000 to 3,000 feet away—plaintiff's argument rests on the assumption that he could have seen the boy when 2,000 to 3,000 feet away, and it would have taken that distance to stop his train—that deceased was asleep or unconscious and unable to take care of himself. His duty began when

he did realize the danger, and considering all the facts and the authority of our own cases, we think the engineer exercised reasonable care to avoid the accident. He acted when the peril became evident and imminent.

It must be borne in mind that this accident did not happen at a crossing or in a city street where rights are reciprocal and where a duty commensurate with the dangers of legitimate passing traffic was upon the engineer, nor was deceased on a trestle or in any extremity where it could be said that he would not be likely to extricate himself.

Reduced to its lowest terms, to hold the appellant to the rule of the last clear chance would be to say that the engineer should have known of the presence of the boy and that he might be asleep or unconscious when the train was at least 2,000 to 3,000 feet way.

We can only say, considering all the facts and inference from facts as revealed by the testimony: the fact that deceased was a trespasser, the noise of the train, which could have been heard for three minutes before the accident, the grinding of the wheels and the popping and hiss of escaping steam when 600 feet away, and the legitimate assumption that one in the situation of the deceased would take some care of his own safety, and the emergent stop made by the engineer, that, if the engineer is to be held to the doctrine of the last clear chance, he took that chance; that is, he did all that could be done in the time left to him to avoid the accident.

In so holding we grant that a railroad is liable even to a trespasser who is in a situation of evident peril, if those in charge of the train discovered the party killed or injured in time to have avoided the accident, for an injury under such circumstances would be classed as willful; but the mere presence of a trespasser, although seen, is not enough to set the doctrine

in motion, nor will it move until it can be said, as a matter of law, that the danger was so evident as to charge an engineer with a duty to stop his train in time to have avoided the accident.

The case of *San Antonio & A. P. R. Co. v. McMillan,* 100 Tex. 562, 102 S. W. 103, 11 Neg. & Com. Cases, note, p. 472, is as nearly like this one as can be found. The one who was killed was sitting on the track and failed to get off when the train came along. The train was running about thirty-five miles an hour. He was seen, but not recognized as a human being, when the train was about 400 feet away, by the fireman who rang the bell. The engineer saw him when about 300 feet away. He blew the whistle and set the brakes when about 200 feet away. It was then too late to avoid the injury, and decedent, who was sitting with "his head bowed with his face in his hands, was oblivious to the approach of the train."

The facts there, as here, contradicted any suggestion that, if the train had been checked, he would have gotten off the track, for he was evidently not in a condition to do so, whether asleep or unconscious. It was contended that the company was liable on the ground of discovered peril.

"In applying the doctrine of discovered peril the railroad company cannot be held liable because the servant was negligent in failing to discover the person or in failing to recognize his peril, but it must appear from the evidence that the servant actually saw the man, realized his peril, and that he would not get off the track. (*Texas & Pac. R. Co. v. Breadow,* 90 Tex. 26.) It must also appear that the discovery of the peril was in time for the trainmen by the use of the means at hand to stop the train before coming in collision with the man."

In *Southern R. Co. v. Stewart,* 153 Ala. 133, 45 South. 51, 11 Neg. & Com. Cases, note, p. 475. After

holding that a railroad company is under no duty to keep a lookout for trespassers, the court said:

"There was no evidence as to the speed of the train, none as to the position of the engineer on the train, none that the train could have been stopped any quicker than it was stopped, and none that the deceased could have been seen by the engineer in time to have stopped. The fact that the track at the place of the injury was straight for a mile and a half and that the day was bright and clear alone are not sufficient to authorize a reasonable inference that the engineer in fact discovered the deceased in time to have avoided the injury. The evidence shows that the deceased was lying down on the track between the rails, and there is no evidence that the engineer was looking forward at a time and place when the deceased could have been discovered in time to have stopped the train and avoided the accident, and it is a matter of common knowledge that engineers, in the operation of engines, have other duties to perform besides that of looking out, and, for aught that can be said, the engineer was at the time engaged in performance of some other of such duties. It would be an unwarranted speculation to leave it to the jury to say whether or not the engineer was at the time looking forward and did discover, or could have discovered, the deceased on the track in time to have avoided the injury by the exercise of due care."

Other cases and texts bearing upon the question presented are: *Imler v. Northern Pac. R. Co.*, 89 Wash. 527, 154 Pac. 1086, Ann. Cas. 1917A 933, L. R. A. 1916D 702; *Scharf v. Spokane & Inland Empire R. Co.*, 92 Wash. 561, 159 Pac. 797; *Dotta v. Northern Pac. R. Co.*, 36 Wash. 506, 79 Pac. 32; *Kroeger v. Grays Harbor Construction Co.*, 83 Wash. 68, 145 Pac. 63; *Hamlin v. Columbia & Puget Sound R. Co.*, 37 Wash. 448, 79 Pac. 991; *Moore v. Great Northern R. Co.*, 58 Wash. 1, 107 Pac. 852, 28 L. R. A. (N. S.) 410; *McCarthy v. New York, N. H. & H. R. Co.*, 240 Fed. 602.

The appellant being under no duty to anticipate the presence of the deceased on the tracks, being only bound to exercise reasonable care to avoid injuring him after discovering his peril, we are constrained to hold that the engineer did all that he could do within reasonable limits and within the time he had at his command.

Reversed, and remanded with instructions to overrule the motion for a new trial.

ELLIS, C. J., HOLCOMB, MOUNT, and WEBSTER, JJ., concur.