[No. 21792. Department One. July 11, 1929.]

HALTON REITAN *et al., Respondents,* v. ROBERT J. CROOKS *et al., Appellants.*[1]

*Whittemore & Truscott,* for appellants.
*Hartge & Cadwallader,* for respondents.

HOLCOMB, J.—Respondents sued appellants for damages to them as a community, received a verdict of the

[1] Reported in 279 Pac. 97.

jury in their favor in the sum of $2,285, which verdict was conditionally reduced by the trial court by the sum of $700 upon motion for a new trial, the condition accepted by respondents, and judgment entered.

The injuries were received by respondent wife, who will hereafter be referred to as if the sole respondent.

The accident occurred at, or shortly after, five o'clock in the afternoon on April 10, 1928, in the intersection of First avenue south, Railroad way and Dearborn street in Seattle. This intersection is a very unusual one. First avenue south runs due north and south, and has a double track street railway line about the middle of its width. Railroad way intersects First avenue south at Dearborn street from the northwest, and, after crossing First avenue south, continues southeast, and has four sets of steam railway surface tracks on it. Dearborn street enters First avenue south from the west, crossing Railroad way, but does not continue to the east of First avenue south at this point. It will thus be seen that the intersection at Dearborn street to the north is an unusually wide and long intersection about the shape of the letter "Y." Railroad way has no sidewalks on either side. It is paved its full width. Dearborn street is a very wide street and is paved its full width. First avenue south is not so wide as either Dearborn street or Railroad way, is paved its full width, and has sidewalks on each side.

Respondent, with a friend, had taken a South Park street car in the business district of the city to go south, intending to leave the car at First avenue south and Dearborn street. When the car arrived there, it went some twenty to thirty feet south of the northwest corner of First avenue south and Dearborn street before stopping. It was a front entrance car, and when respondent and her friend alighted, they were some

twenty to twenty-five feet south of the corner mentioned.

Upon alighting from the street car, respondent and her companion stood very close to it, waited until it passed and then proceeded directly east, across the street, to the center of the northbound street car track on First avenue south, that being the easterly line of the street car tracks, where they were compelled to stop to allow northbound automobile traffic to pass, and to await a clear space in which they might cross to the east sidewalk of First avenue south.

At the time they stopped in the center of the north bound street car track, they looked south and saw no street car coming north on that track; but there was heavy automobile traffic east of it. They were there two or three minutes waiting for north bound automobile traffic on the east side of First avenue south to pass them.

They declared that they stood right where they were in the middle of the easterly, or north bound, street car track. When the street car passed on, they first looked to the left to see the state of traffic on the west side of the street, going south, and saw no opportunity of getting back to the sidewalk on the northwest corner of the intersection. They then proceeded directly east to get across to the right hand side of the street. They were constantly looking to the right and observing the stream of traffic coming from that direction and waiting for an opportunity to cross the street to the sidewalk. After they had been in this position two or three minutes, they were struck by a four-ton truck belonging to appellant Armour & Co. and driven by appellant Crooks. The truck struck respondent on the hip toward the rear, tearing her clothing on that part of her person, throwing her to the pavement and causing her injuries. Neither respondent nor her companion saw

the truck until just before it struck them. They did not know where it had come from.

Crooks, the driver, testified that he drove up Dearborn street and, just at the westerly rail of the railroad tracks on Railroad way, paused, and then drove across to a place he marked "X" on a map near the easterly one of the railroad tracks, and stopped to wait for south bound automobile traffic to pass. When he found an opportunity to proceed further, he proceeded easterly across First avenue south, and had passed the middle of the street and had his left wheels on the inside of the east rail of the easterly street car track when he turned north. He placed the point of collision with respondent at a place much further south than respondent and her companion did. He said that he was interfered with by a car and motorcycle which passed him when he was about to turn north on First avenue south. The seat of his truck was four feet from the ground. Respondent was a rather large and heavy woman. Crooks said he suddenly saw respondent and her companion when they were about four feet in front of his truck. At that time he was traveling twelve to fifteen miles per hour. He immediately put on his brakes and turned to the left, according to his final testimony, to avoid striking the woman. His excuse for not seeing them was that the car and motorcycle had come from the south on his right and had attracted his attention.

A witness who was used by both parties, and therefore may be considered as wholly disinterested, testified that, at the time the truck was stopped at the place where the collision occurred, it was considerably north of the place indicated by Crooks in his evidence. This witness had also seen the truck coming along Dearborn street to the intersection with that street and Railroad way, where it stopped. This witness was parking his

own car on the east side of First avenue south near where the accident occurred. He did not see the truck any more until just at the time of the accident. He said that the truck was not quite straightened out north and south, but was at a slight angle with its two right-hand wheels on the east side of the east rail of the north bound street car track, but not quite straight. The right rear wheel was very close to the rail and the front right wheel was about a foot to the east of the outside rail.

Crooks also testified that, when the accident occurred, he had just turned north. The natural inference from this situation—the location of respondent when the accident occurred and if Crooks had just turned north at that time—is that Crooks did not proceed directly east along Dearborn street across Railroad way and across the street car tracks in First avenue south and then turn left to go north on First avenue south, but must have cut across the long intersection, probably perpendicularly across the railroad tracks to the north bound track in First avenue south, and had just turned north when he struck respondent. That would account for the fact, which we must assume to be true, that respondent and her companion, looking to their right at all times and seeking a chance to pass through the north bound traffic on First avenue south, did not at any time see Crooks' truck. That would also account for the fact that respondent was struck slightly in the rear, and did not know the truck was upon her until she was struck.

The first contention of appellants is that the action should have been dismissed and judgment entered as a matter of law.

This contention is based upon our well settled rules that an automobile driver is not an insurer of the safety of pedestrians on the street, nor the guardian

of an adult person in full possession of his faculties *(Horney v. Giering,* 132 Wash. 555, 231 Pac. 958; *Jones v. Seattle,* 144 Wash. 188, 257 Pac. 393); and that the fact that an accident occurred is not of itself any proof of negligence. These rules of law were given to the jury in instructions by the court.

Under this contention, the principal argument is that Crooks, the driver of the truck, was guilty of no negligence.

The unusual situation which we have delineated in the statement, and the evidence on behalf of respondent, as well as that of Crooks, himself, shows that there was ample evidence of negligence on the part of Crooks to go to the jury. While he declares that he did not see respondent and her companion until he was about four feet from them, because his attention had been attracted to a car and a motorcycle, he had as much duty to look to the safety of pedestrians in a busy intersection in which the traffic was so very greatly congested at that time, as to look out for an opportunity for himself to get into the stream of traffic on that side of the street. His failure to look for pedestrians ahead of him, in the intersection between the streams of traffic, was some negligence. *Yanase v. Seattle Taxicab & Transfer Co.,* 91 Wash. 415, 157 Pac. 1076; *Horney v. Giering, supra.*

Appellants further claim that the evidence in the case so conclusively showed contributory negligence on the part of respondent, as had been pleaded by appellants, that she should not recover.

It is first argued that respondent did not obey the city ordinance requiring that a pedestrian, in crossing the street, must keep a lookout to the left until reaching the center line of the street and then to the right.

This is exactly what respondent and her companion positively testified they did. They said that the stream

of cars was so great on the west side of First avenue south that they could not return to that side; that the safest way was for them to get upon the north bound or easterly street car track, as no street car was approaching on it, and wait there an opportunity to get through the stream of north bound traffic on that side. That was what they did. They were in a place apparently as safe as could be found in that immediate neighborhood, but while in the only comparatively safe place for the time, they were struck.

It may be that respondent was required to exercise a greater degree of care and vigilance under the circumstances; and the court so instructed; but they testified that they looked constantly to the right, where the traffic there should come from, when they were in that position, and could see no street car or automobile coming at the position in which they stood.

The court correctly instructed the jury that all of the space within the lines of both highways wherein a highway joins or crosses another at an angle, constitutes the intersection thereof; and that if one highway joins, but does not cross the other, all of the space included within the lines of both extended, would constitute the intersection. Although there were no street cross-walk lines at any place within this complicated intersection, respondent had the right, as pedestrians generally do, to find a reasonably safe lane of travel, as a reasonably prudent person, in view of all the circumstances and conditions existing.

Respondent could not look in all directions at once. She was looking at the stream of traffic coming from the south, and could not be expected to look for a vehicle coming from her rear. Evidently that is what the truck did, or it would not have struck her as it did. Hence, we cannot determine respondent to be guilty of

contributory negligence as a matter of law. Under the facts and circumstances shown, it was a question for the jury. *Johnson v. Johnson,* 85 Wash. 18, 147 Pac. 649; *Collins v. Nelson,* 112 Wash. 71, 191 Pac. 819; *Hooven v. Moen,* 150 Wash. 8, 272 Pac. 50.

It is next argued that a new trial should have been granted if the motion for judgment n. o. v. were denied, because of errors in giving instruction 6 by the trial court, and in refusing to give appellants' requested instructions numbered 7, 11 and 12.

The trial court first gave instruction 6, as follows:

"If you find that Mrs. Reitan was standing in the street at the intersection in question in such a way that would have indicated to a reasonably prudent man that she was unconscious of the approach of the defendants' truck, and that the driver thereof actually saw her and observed her state of mind and discovered her peril in time to avoid striking her, and failed to avoid striking her, then, in that case, his negligence would constitute the proximate cause of the accident and the defendants would be liable."

Upon objection by respondent to this instruction, because it was contended that the instruction was incomplete and not a full and correct statement of the law upon such a situation, the court recalled the jury and added to the instruction by repeating what had been given in the first instance, and then adding to it as follows:

"Or if you find that the negligence of the plaintiff Myrtle Reitan, if any, terminated at the time of the collision and had placed her in a situation of peril from which she could not by the exercise of reasonable care have extricated herself and that the defendant Robert J. Crooks did not actually see her peril, but by keeping a reasonably careful lookout commensurate with the dangerous character of the agency (the truck) and the locality, he should have seen the peril of the

plaintiff Myrtle Reitan and appreciated it in time, by the exercise of reasonable care to have avoided the injury, and that the failure to escape the injury resulted from failure to keep that lookout and exercise that care, then your verdict must be for the plaintiffs and against the defendants Robert J. Crooks and Armour & Company.''

Appellants first assert that there was nothing in this case calling for the application of the rule of last clear chance as covered by the latter part of instruction 6, as modified by the trial court.

Manifestly, if respondent was in a position of peril in which she had placed herself, her own negligence having culminated at the time, and did not actually see her peril, and Crooks could, by the exercise of reasonable care have seen it and avoided the injury, the rule of last clear chance applied and the instruction was properly given. There is no contention on behalf of appellants that the instruction was not a correct definition, but only that it has no application in this case.

The situation existing in this case is somewhat similar to that existing in *Nicol v. Oregon-Washington R. & Navigation Co.*, 71 Wash. 409, 128 Pac. 628, 43 L. R. A. (N. S.) 174, and is comparable to that shown in *Herrick v. Washington Water Power Co.*, 75 Wash. 149, 134 Pac. 934, 48 L. R. A. (N. S.) 640, although in that case the injured party was drunk and had either fallen down or placed himself upon the street car tracks.

While the case could probably have been submitted to the jury by the trial court solely upon the issues of negligence and contributory negligence, as to which the trial court gave very concise and lucid definitions and instructions, without the injection of the last clear chance proposition, we think the circumstances shown in this case, especially under the evidence of Crooks

himself, justified the submission of that issue to the jury.

Requested instruction 11 was one to the effect that respondent could not be heard to say that she looked and did not see that which she must have seen had she looked, and that, if the jury found that her failure in that respect contributed to the injury complained of, their verdict should be for the defendant.

That instruction was based upon the situation existing in *Silverstein v. Adams,* 134 Wash. 430, 235 Pac. 784, where a newsboy stepped off a curb intending to cross Yesler way to the Frye Hotel, where he sold newspapers. It was at night and the automobile which struck him had its lights burning, and there was nothing to prevent the injured party from seeing the approaching car, had he looked. He was struck when he had gone only about three feet from the curb by a car coming from his left, although he testified that he looked to his left and saw no car coming when he started to leave the curb. Had he looked, he must have seen it. It was there and visible. The facts in such a case as that do not fit the facts in this case, where the car, if it had been visible at all before it struck respondent, must have been to her rear, in which direction she was not required to look and did not look.

Requested instruction 12 was one relating to an unavoidable collision.

Under all the facts and issues in this case, we see no room for the jury to have found the collision to have been unavoidable. Both negligence and contributory negligence were alleged, and facts thereunder were submitted to the jury upon appropriate instructions. These issues, upon sufficient evidence and inferences therefrom, were resolved against appellants.

We conclude that the motion for judgment n. o. v. and the motion for a new trial were properly denied.

Finding no error justifying reversal, the judgment is affirmed.

TOLMAN, PARKER, and BEALS, JJ., concur.