[No. 27215. Department Two. October 19, 1938.]

HARRY J. SCOTT et al., Respondents, v. THE CITY OF
SEATTLE, Appellant.

HENRY A. MUNN et al., Respondents, v. THE CITY OF
SEATTLE, Appellant.[1]

A. C. Van Soelen and C. C. McCullough, for appel-
lant.

John J. Sullivan and Carl Pruzan, for respondents.

SIMPSON, J.—Plaintiffs instituted their actions to
recover damages for personal injuries sustained by
them when Mrs. Scott and Mrs. Munn were struck by
a Seattle street car. The two cases were consolidated,
and upon a trial to the court sitting without a jury,
findings and conclusions were made and entered sup-
porting the contentions of plaintiffs. From a judg-
ment thereon, the defendant has appealed.

[1]Reported in 83 P. (2d) 351.

The only question presented is whether the doctrine of last clear chance is applicable. Appellant does not question the rule, but does contend that the facts do not justify its application.

For convenience, we will refer to Mrs. Scott and Mrs. Munn as respondents.

The street car system owned and operated by the city of Seattle has double tracks laid upon Westlake avenue north. Westlake avenue north runs generally north and south. It is paved, and from curb to curb is forty-eight feet wide. The distance from the west curb to the first steel rail is sixteen feet, seven and three-fourths inches. The distance from the outside rail of the southbound track to the center of the street is seven feet, four and one-fourth inches, and from the outside rail of the easterly or north track to the curb line is sixteen feet, seven and three-fourths inches. The accident occurred in the middle of the street, at a point approximately halfway between the intersections of Thomas and Harrison streets, March 16, 1937, at 7:45 p. m. The street was well lighted and the visibility good.

The evidence favorable to respondents shows that the respondents, before starting across the street, looked both north and south and saw the lights of cars coming from a distance. Deciding that a crossing could be made in safety, they proceeded to cross in a southeasterly direction. When they had reached the center of the street, they found automobiles in front of them going north and just back of them going south. In that situation, they decided to, and did, remain in the middle of the street.

At and just prior to that time, a street car was going south on the west rails. This car then ran into respondents and injured them. Some of the witnesses testified that, at the time respondents stopped in the

middle of the street, the street car was eighty-five to one hundred feet away, while others testified it was approximately two blocks away. There was testimony to the effect that the street car could be stopped within either distance mentioned if the current was cut off and the brakes applied.

Appellant introduced testimony tending to contradict that given by respondents, but after a careful examination of the evidence, we conclude that the trial court correctly analyzed all of the evidence and drew the proper conclusions therefrom.

In making his oral decision at the end of the case, he said:

"In any event I feel certain that these ladies were blocked and trapped by virtue of these two lanes of traffic going north and going south, and that they were in the position at the time that they stated they were in, and I feel that this operator of this street car, he should and he could have seen the position that these ladies were in if he were paying any attention to the operation of that car at the time. There isn't any question about these two lanes of traffic. One of these men testified that there were some six or seven cars going north on the east lane of traffic. One of these ladies testified there was almost a continuous stream of traffic going north. He himself testified—the motorman—that he saw these parked automobiles on that side. He also testified about the other car coming and going south in the same direction, and he testified that he saw these ladies. The trouble is that I think he thought that something else was going to happen than just what did happen. . . .

". . . I think the negligence of these plaintiffs had ceased at the time and that the defendant is responsible for the injuries these ladies have received."

The definition of last clear chance is well settled in this state, and is expressed as follows in *Nicol v. Oregon-Washington R. & Nav. Co.*, 71 Wash. 409, 128 Pac. 628, 43 L. R. A. (N. S.) 174:

"The doctrine of last clear chance is applied perhaps most frequently to cases where the plaintiff's negligence has terminated, and where the defendant thereafter, in the exercise of reasonable care and owing a duty to exercise it, should have discovered the peril in time to have prevented an injury. It has also often been applied where it would be apparent to one in control of a dangerous agency, if exercising reasonable vigilance, that a traveler is unconscious of his danger or so situated as to be incapable of self-protection; and in such cases, if the one controlling the agency could have averted the danger by exercising reasonable care and failed to do so, liability follows. It is based upon the principle that the negligence of the one is remote, and that the negligence of the other is the proximate and efficient cause of the catastrophe, he having the last clear opportunity of preventing it."

This statement has been approved by this court in the following cases: *O'Brien v. Washington Water Power Co.*, 71 Wash. 688, 129 Pac. 391; *Herrick v. Washington Water Power Co.*, 75 Wash. 149, 134 Pac. 934, 48 L. R. A. (N. S.) 640; *Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A, 943; and *Ricker v. Oregon-Washington R. & Nav. Co.*, 97 Wash. 183, 166 Pac. 71; *Reitan v. Crooks*, 153 Wash. 75, 279 Pac. 97.

It is clear that the respondents were in a position of peril brought about through their own negligence by reason of attempting to walk across a street in the middle of the block. That negligence, however, had ceased prior to the time of the impact when they were standing in the middle of the street flanked on both sides by moving automobiles. It is equally clear that the motorman on the street car did see, or could have seen, the respondents in their perilous condition if he had exercised reasonable care. He did not exercise that care required by the rule as stated, and such neg-

ligence on his part renders the city liable for the injuries sustained by the respondents.

The judgment is affirmed.

STEINERT, C. J., BEALS, MILLARD, and GERAGHTY, JJ., concur.